The STATE of Ohio, Appellee,

v.

WARD, Appellant.

[Cite as *State v. Ward* (1999), 130 Ohio App.3d 551.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72371.

Decided Feb. 8, 1999.

554

*Melody A. White*, Assistant Prosecuting Attorney, for appellee.

*Scott Roger Hurley,* Assistant Public Defender, for appellant.

---

PATTON, Presiding Judge.

In 1994, defendant Bobby Ward pleaded guilty to one count of attempted felonious sexual penetration of a person under thirteen years of age, an aggravated second-degree felony under former R.C. 2907.12.[1] In 1997, the state filed a motion seeking to have defendant declared a sexual predator under Am.Sub.H.B. No. 180 ("H.B. 180"), Ohio's sexual predator law, R.C. 2950.09(C). The court convened a hearing at which defendant stipulated to the facts of the underlying case, including the victim's age and threats of violence defendant made to the victim. The court entered a sentencing addendum finding defendant to be a sexual predator.

We stayed resolution of this appeal, as well as all others filed in this court that raised issues relating to the constitutionality of the sexual predator law, pending resolution of *State v. Cook* (Aug. 7, 1997), Allen App. No. 1–97–21, unreported, 1997 WL 452014. In *Cook,* the Third District Court of Appeals vacated Cook's sexual predator determination because it found that R.C. Chapter 2950 violated the ban against retroactive legislation. The Ohio Supreme Court reversed the Third District Court of Appeals in *State v. Cook* (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, and reinstated the sexual predator determination. With *Cook* now decided, we lifted the stay on all pending H.B. 180 appeals.

"I. H.B. 180, as applied to appellant, violates Art. I, Sec. 10, of the United States Constitution as ex post facto legislation, and violates Art. II, Sec. 28, of the Ohio Constitution as retroactive legislation."

The first assignment of error complains that R.C. Chapter 2950 is unconstitutional because it is an *ex post facto* law in violation of Section 10, Article I of the United States Constitution and Section 28, Article II of the Ohio Constitution. We summarily overrule this assignment on authority of the second paragraph of the syllabus to *Cook,* which states, "R.C. 2950.09(B)(1), as applied to conduct prior to the effective date of the statute, does not violate the *Ex Post Facto* Clause of Section 10, Article I of the United States Constitution."

"II. The sexual predator hearing in the case at bar violated appellant's due process rights, guaranteed by the United States and Ohio Constitution, when the hearing failed to comport with the mandates of H.B. 180 which include 'wit-

---

**1.** The General Assembly repealed R.C. 2907.12 in 1996. Penetration by any body part, however slight, is considered "sexual conduct" under R.C. 2907.01(A). Hence, the former offense of felonious sexual penetration has been merged into R.C. 2907.02, the offense of rape.

nesses,' 'evidence,' and the 'right to cross–examine' the evidence against appellant."

The second assignment of error complains that the hearing in this case violated defendant's due process rights because the hearing failed to comport with the mandates of R.C. 2950.09, which include the right to present witnesses, evidence and cross-examine the evidence.

Section 16, Article I of the Ohio Constitution provides that every person who sustains a legal injury "shall have remedy by due course of law." The Supreme Court of Ohio considers the "due course of law" provision of the Ohio Constitution to be the equivalent of the "due process of law" provision in the Fourteenth Amendment to the United States Constitution. *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 422–423, 633 N.E.2d 504, 510–511; *Direct Plumbing Supply Co. v. Dayton* (1941), 138 Ohio St. 540, 544, 21 O.O. 422, 423–424, 38 N.E.2d 70, 72.

The Due Process Clause has been interpreted to contain two components: substantive due process and procedural due process. "Procedural due process" ensures that a state will not deprive a person of life, liberty, or property unless fair procedures are used in making that decision, *Zinermon v. Burch* (1990), 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 113–114. "Substantive due process" guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision. *Eastlake v. Forest City Ent., Inc.* (1976), 426 U.S. 668, 676, 96 S.Ct. 2358, 2363, 49 L.Ed.2d 132, 139. Defendant's argument under this assignment of error concerns procedural due process only.

■ Procedural due process is a "guarantee of fair procedure." Procedural due process guarantees an affected individual the right to some form of hearing, with notice and an opportunity to be heard, before that individual is divested of a protected interest. See *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494, 503–504. The requirements of procedural due process are "flexible" and call for such procedural protections "as the particular situation demands." *Mathews v. Eldridge* (1976), 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33; *State v. Hamilton* (1996), 75 Ohio St.3d 636, 639, 665 N.E.2d 669, 671–672. The process due an individual varies according to the type of proceeding involved.

In *Cook*, the Supreme Court stated that the sexual predator law serves "the wholly remedial purpose of protecting the public"; hence, "there is no clear proof that R.C. Chapter 2950 is punitive in its effect." *Cook*, 83 Ohio St.3d at 423, 700 N.E.2d at 585. The Supreme Court analogized the sexual predator determination to "miscellaneous criminal proceedings" like probation revocation, where a probationer in a revocation proceeding does not have available all procedural

rights possessed by a criminal trial defendant. *Id.* at 425, 700 N.E.2d at 586–587; see, also, *State ex rel. Wright v. Ohio Adult Parole Auth.* (1996), 75 Ohio St.3d 82, 92, 661 N.E.2d 728, 736.

The procedural requirements of the sexual predator law are set forth in R.C. 2950.09(B)(1), which provides:

"The court shall give the offender and the prosecutor who prosecuted the offender for the sexually oriented offense notice of the date, time, and location of the hearing. At the hearing, the offender and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator. The offender shall have the right to be represented by counsel and, if indigent, the right to have counsel appointed to represent the offender."

■ R.C. 2950.09(B)(1) fully comports with procedural due process because the statute protects an offender's right to a hearing, with notice and an opportunity to be heard. *Cleveland Bd. of Edn. v. Loudermill, supra.* As with the analogous probation revocation hearing, R.C. 2950.09(B)(1) also guarantees the right to counsel, the right to present evidence, and the right to cross-examine witnesses under oath.

■ Defendant, however, complains that the court violated his right to due process by determining him to be a sexual predator solely on evidence of a prior conviction—something on which he could not cross-examine. We will address the substance of this claim in our discussion of the third assignment of error. Nevertheless, we wish to emphasize our disagreement in principle with any argument that an offender's prior convictions, standing alone, cannot be clear and convincing evidence that an offender is likely to engage in the future in one or more sexually oriented offenses as required by R.C. 2950.09(B)(3).

An offender's prior criminal record on all offenses, including but not limited to sexual offenses, is relevant in the court's sexual predator determination. See R.C. 2950.09(B)(2)(b). This section codifies the notion that past conduct can often be a reliable indicator of future conduct. Sexually oriented offenders in particular are thought to pose a great risk of recidivism, a point specifically noted by the General Assembly when it stated that sexual predators and habitual sex offenders "pose a high risk of engaging in future offenses even after being released from imprisonment." See R.C. 2950.02(A)(2). As a *factor* in a sexual predator determination, prior convictions serve a very useful function.

Given that a court can consider a prior conviction, we fail to see how defendant can complain that he did not have the right to cross-examine the evidence of his prior conviction. R.C. 2945.75(B) states that whenever the state must prove a

defendant's prior conviction, "a certified copy of the judgment entry in such prior conviction together with evidence sufficient to identify the defendant * * * is sufficient to prove such prior conviction." A certified copy of a judgment entry of a prior conviction is not the exclusive method to prove a prior conviction. An offender may, and often does, stipulate to the prior conviction, as defendant did in this case. Having stipulated to the prior conviction, defendant cannot complain that he could not cross-examine on the substance of that conviction.

We hold that R.C. Chapter 2950 does not violate due process because it affords adequate notice and an opportunity to defend. The second assignment of error is overruled.

"III. The evidence is insufficient, as a matter of law, to prove 'by clear and convincing evidence' that appellant 'is likely to engage in the future in one or more sexually oriented offenses.' "

The third assignment of error raises the substantive issue whether the court had clear and convincing evidence to show that defendant should be classified as a sexual predator. Defendant argues that the state's evidentiary standard to prove an offender is a sexual predator requires more than just certified copies of prior convictions and that standard of proof has not been met in this case.

A sexual predator is defined in R.C. 2950.01(E) as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.09(B)(3) states:

"After reviewing all testimony and evidence presented at the hearing conducted under division (B)(1) of this section and the factors specified in division (B)(2) of this section, the judge shall determine by clear and convincing evidence whether the offender is a sexual predator. * * * If the judge determines by clear and convincing evidence that the offender is a sexual predator, the judge shall specify in the offender's sentence and the judgment of conviction that contains the sentence that the judge has determined that the offender is a sexual predator and shall specify that the determination was pursuant to division (B) of this section."

The statute requires the court to find by clear and convincing evidence that an offender is "likely to" commit a sexually oriented offense in the future. Stated differently, the standard is whether there exists proof that produces a firm belief or conviction that an offender will more likely than not commit another sex offense in the future.

The factors the court must consider when making a sexual predator determination are set forth in R.C. 2950.09(B)(2):

"(a) The offender's age;

"(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;

"(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;

"(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;

"(e) Whether the offender used drugs or alcohol .to impair the victim of the sexually oriented offense or to prevent the victim from resisting;

"(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, .whether the offender participated in available programs for sexual offenders;

"(g) Any mental illness or mental disability of the offender;

"(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;

"(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;

"(j) Any additional behavioral characteristics that contribute to the offender's conduct."

When determining whether a person is a sexual predator, the court must consider all relevant factors, including those listed in R.C. 2950.09(B)(2). "The statute does not require the court to list the criteria, but only to 'consider all relevant factors, including' the criteria in R.C. 2950.09(B)(2) in making his or her findings." *Cook*, 83 Ohio St.3d at 426, 700 N.E.2d at 587. .

During the sexual predator determination hearing, the state told the court that defendant pleaded guilty to one count of felonious sexual penetration, an aggravated second-degree felony. The offense involved a threat of force and digital penetration of a five-year-old victim, along with a threat to kill the victim if she told anyone what he had done. The state submitted as its only exhibit a certified copy of the conviction.

■ Defendant noted that the state accurately summarized the history of the case and, making sure it preserved its right to object to the constitutionality of the statute, told the court that "we don't have any qualms with anything other

than the constitutionality of this. That's all." The state noted that it had been prepared to call as witnesses a police detective or the victim, but defendant's stipulation to the facts of the case made such an evidentiary showing unnecessary. Defendant agreed and clearly stated his stipulation to the underlying facts of the felonious sexual penetration conviction. The court found defendant to be a sexual predator based solely on the stipulated facts. The state now argues that this determination was uncontested, and thus defendant waived his right to argue the court's sexual predator determination on appeal.

We disagree with the state's argument that defendant stipulated to being a sexual predator. Defendant stipulated to the facts supporting his conviction on a sexually oriented offense, not that he was, in fact, a sexual predator. This is an important distinction, for if we accept the state's argument it would mean that any conviction for a sexually oriented offense would be irrebuttable proof that an offender is a sexual predator. This conclusion cannot hold, because the statute is not "one strike and you're out."

We find support in our conclusion because R.C. Chapter 2950 creates several classifications of sexual offenders, including the "habitual sex offender"— a person who is convicted of or pleads guilty to a sexually oriented offense and who has been previously convicted of or pleaded guilty to one or more sexually oriented offenses. See R.C. 2950.01(B). We think it reasonable to assume that if one is classified a habitual sex offender, one could readily be labeled a sexual predator, for the offender has already demonstrated a pattern of committing sexually oriented offenses; therefore, the court could conclude that the offender would likely commit further offenses in the future. But simply committing a single sexually oriented offense is not proof, without further evidence or other compelling facts, that the offender is "likely to engage in the future in one or more sexually oriented offenses." Had the legislature intended the result argued by the state, it would have done away with the hearing and weighing of evidence and simply classified any person committing a sexually oriented offense as a sexual predator.

In this case, the only evidence demonstrating that defendant was "likely to engage in the future in one or more sexually oriented offenses" consisted solely of proof of defendant's conviction on the felonious sexual penetration charge, the age of the victim, and the threat of force both in committing the offense and ensuring the victim's silence after the offense. All this evidence shows is that defendant committed a sexually oriented offense—it does not show by clear and convincing evidence that defendant is more likely than not predisposed to commit another sexually oriented offense. *State v. Hicks* (1998), 128 Ohio App.3d 647, 716 N.E.2d 279.

Reference to the factors set forth in R.C. 2950.09(B)(2) offers some support for the court's sexual predator determination in this case, but not by clear and convincing evidence. The relevant statutory factors to support the court's findings are the age of the victim (subsection [B][2][c]), defendant's cruelty during the commission of the offense (subsection [B][2][i]), and defendant's digital penetration as part of the nature of the offense (subsection [B][2][h]).

The remaining factors under R.C. 2950.09(B)(2) do not suggest that defendant be labeled a sexual predator. In particular, there is no evidence to show that he committed any previous criminal offenses of any kind, much less sexually oriented offenses, that he had any mental illness or incapacity, or that he engaged in a pattern of abuse.

■ In this case, the court erroneously believed that it could determine defendant to be sexual predator solely on facts arising from the underlying sexual offense. Although the court erred in this respect, the record suggests that there may be other relevant information bearing on the sexual predator determination.

It is important to keep in mind that R.C. 2950.09 does not place limits on the factors a court may consider, but simply directs the court to consider "all relevant factors." Relevant information can come from many sources. In *Cook*, the Supreme Court stated that "reliable hearsay, such as a presentence investigation report, may be relied upon by the trial judge." *Id.*, 83 Ohio St.3d at 425, 700 N.E.2d at 587. R.C. 2950.09(B)(1) permits either side to call witnesses and expert witnesses, and we see no reason, absent privilege or any other legal restraint on testimony, to limit who might testify on matters of fact and, assuming relevance, what that testimony may entail.

The record shows that a pretrial report had been prepared prior to sentencing, but the court did not consider the contents of that report, or any other evidence on that matter, when making its sexual predator determination.

In *State v. Wilson* (Sept. 11, 1998), Hamilton App. No. C–970880, unreported, 1998 WL 597649, the court considered a very similar case in which a trial court found Wilson to be a sexual predator, but limited its review of evidence in the sexual predator determination hearing to consideration of the indictment, the verdict, and judgment entry of conviction. The court of appeals found that the trial court's determination could not be made solely upon the uncontested fact of Wilson's underlying conviction and reversed. Citing information contained in a trial transcript and decision on direct appeal, the court of appeals remanded the cause for further consideration of "all parts of the record then available to the court"; parts of the record that may well substantiate the trial court's decision to find Wilson a sexual predator. *State v. Wilson, supra,* unreported, at 4–5; see,

also, *State v. Glynn* (Apr. 1, 1998), Medina App. No. 2712–M, unreported, 1998 WL 150359.

We therefore sustain the assignment of error and, in conformity with *Wilson*, remand this matter for further consideration of the record *in toto.*

"IV. Application of H.B. 180 in the case at bar violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution."

The fourth assignment of error raises a constitutional challenge under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The registration requirements of R.C. 2950.09(C)(1) apply only to offenders who committed a sexually oriented offense before the effective date of the statute and were still in prison when determined to be a sexual predator. The statute does not apply to those offenders who committed a sexually oriented offense prior to the effective date of the statute, but were released from prison before a court determined whether they were sexual predators. Defendant maintains that there is no rational basis for the General Assembly to distinguish between current and former prison populations.[2]

R.C. 2950.09(C)(1) states:

"If a person was convicted of or pleaded guilty to a sexually oriented offense prior to the effective date of this section, if the person was not sentenced for the offense on or after the effective date of this section, and if, on or after the effective date of this section, the offender is serving a term of imprisonment in a state correctional institution, prior to the offender's release from the term of imprisonment, the department of rehabilitation and correction shall determine whether to recommend that the offender be adjudicated as being a sexual predator."

Simply stated, the Equal Protection Clause guarantees that persons who are similarly situated will be treated similarly. This does not mean that the General Assembly cannot make laws by classifying persons. In *Valvoline Instant Oil Change, Inc. v. Tracy* (1997), 78 Ohio St.3d 53, 54–55, 676 N.E.2d 114, 115 the Supreme Court of Ohio stated:

"Of course, most laws differentiate in some fashion between classes of persons. The Equal Protection Clause does not forbid classifications. It simply keeps

---

2. Defendant does not argue that R.C. Chapter 2950 violates the Equal Protection Clause as applied to all sexually oriented offenders who might be classified as sexual predators. We note that the courts considering that issue have found no suspect classification. See *State v. Lance* (Feb. 13, 1998), Hamilton App. Nos. C–970301, C–970282 and C–970283, unreported; *State v. Chappell* (Feb. 24, 1998), Franklin App. Nos. 97APA04–543 and 97APA05–636, unreported, 1998 WL 85888; *State v. Jameson* (Apr. 22, 1998), Lorain App. No. 97CA006704, unreported, 1998 WL 193489.

governmental decisionmakers from treating differently persons who are in all relevant respects alike. *F.S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 415 [40 S.Ct. 560, 561, 64 L.Ed. 989, 990–991]."

In *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.* (1998), 83 Ohio St.3d 229, 233, 699 N.E.2d 463, 467, the Supreme Court stated:

"The standards for determining whether a law runs afoul of equal protection generally involve identifying the means and ends of the law at issue and examining the relationship between them. If the means employed by the law at issue create separate classes of persons who receive different treatment, the laws will be tested under the equal protection guarantee. Otherwise, if no distinctions are drawn and no classifications are created, there is no reason to subject the law to equal protection scrutiny."

For the most part, "class distinctions in legislation are permissible if they bear some rational relationship to a legitimate governmental objective." *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909, 911, citing *Clements v. Fashing* (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 2843–2844, 73 L.Ed.2d 508, 515–516. It is only when classifications are made on suspect classes of persons (for example, on the basis of race) or place burdens upon the exercise of fundamental rights (for example, the right to vote) that courts depart from traditional equal protection principles. *State v. Thompkins* (1996), 75 Ohio St.3d 558, 561, 664 N.E.2d 926, 929; *Cleburne v. Cleburne Living Ctr.* (1985), 473 U.S. 432, 440, 105 S.Ct. 3249, 3254–3255, 87 L.Ed.2d 313, 320–321.

■ The registration and notification requirements of R.C. Chapter 2950 do not implicate fundamental rights in a manner that would subject the sexual predator law to strict scrutiny. See, *e.g., State v. Thomas* (Mar. 27, 1998), Greene App. No. 97 CA 86, unreported, 1998 WL 401838; *State v. Chappell* (Feb. 24, 1998), Franklin App. Nos. 97APA04–543 and 97APA05–636, unreported, 1998 WL 85888; *State v. Jameson* (Apr. 22, 1998), Lorain App. No. 97CA006704, unreported, 1998 WL 193489; *State v. Lance* (Feb. 13, 1998), Hamilton App. Nos. C–970301, C–970282 and C–970283, unreported, 1998 WL 57359. Accordingly, we need determine only whether the General Assembly set forth a rational basis for the registration and notification requirements under the sexual predator law.

In *State ex rel. Nyitray v. Indus. Comm.* (1983), 2 Ohio St.3d 173, 175, 2 OBR 715, 717, 443 N.E.2d 962, 964 the Supreme Court stated that "[e]qual protection of the laws requires the existence of reasonable grounds for making a distinction between those within and those outside a designated class. The 'reasonableness' of a statutory classification is dependent upon the purpose of the Act." The law may impose "special burdens" upon a defined class in order to achieve permissi-

ble ends, so long as the distinctions drawn between the special class and others outside that class have "some relevance to the purpose for which the classification is made." *Rinaldi v. Yeager* (1966), 384 U.S. 305, 309, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577, 580, citing *Baxstrom v. Herold* (1966), 383 U.S. 107, 111, 86 S.Ct. 760, 762–763, 15 L.Ed.2d 620, 623–624.

In R.C. 2950.02, the General Assembly made the following declaration concerning its intent in passing the sexual predator law:

"(A) The general assembly hereby determines and declares that it recognizes and finds all of the following:

"(1) If the public is provided adequate notice and information about sexual predators, habitual sex offenders, and certain other offenders who commit sexually oriented offenses, members of the public and communities can develop constructive plans to prepare themselves and their children for the sexual predator's, habitual sex offender's, or other offender's release from imprisonment, a prison term, or other confinement. This allows members of the public and communities to meet with members of law enforcement agencies to prepare and obtain information about the rights and responsibilities of the public and the communities and to provide education and counseling to their children.

"(2) Sexual predators and habitual sex offenders pose a high risk of engaging in further offenses even after being released from imprisonment, a prison term, or other confinement and that protection of members of the public from sexual predators and habitual sex offenders is a paramount governmental interest.

"(3) The penal and mental health components of the justice system of this state are largely hidden from public view, and a lack of information from either component may result in the failure of both systems to satisfy this paramount governmental interest of public safety described in division (A)(2) of this section.

"(4) Overly restrictive confidentiality and liability laws governing the release of information about sexual predators and habitual sex offenders have reduced the willingness to release information that could be appropriately released under the public disclosure laws and have increased risks of public safety.

"(5) A person who is found to be a sexual predator or a habitual sex offender has a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government.

"(6) The release of information about sexual predators and habitual sex offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems as long as the information released is rationally related to the furtherance of those goals.

"(B) The general assembly hereby declares that, in providing in this chapter for registration regarding sexual predators, habitual sex offenders, and offenders who have committed sexually oriented offenses and for community notification regarding sexual predators and habitual sex offenders who are about to be or have been released from imprisonment, a prison term, or other confinement and who will live in or near a particular neighborhood or who otherwise will live in or near a particular neighborhood, it is the general assembly's intent to protect the safety and general welfare of the people of this state. The general assembly further declares that it is the policy of this state to require the exchange in accordance with this chapter of relevant information about sexual predators and habitual sex offenders among public agencies and officials, and to authorize the release in accordance with this chapter of necessary and relevant information about sexual predators and habitual sex offenders to members of the general public as a means of assuring public protection and that the exchange or release of that information is not punitive."

The very nature of enacting laws means that a starting point must be established for all new laws. " '[T]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' " *State ex rel. Lemmon v. Ohio Adult Parole Auth.* (1997), 78 Ohio St.3d 186, 188, 677 N.E.2d 347, 349, quoting *Sperry & Hutchinson Co. v. Rhodes* (1911), 220 U.S. 502, 505, 31 S.Ct. 490, 491, 55 L.Ed. 561, 562–563.

The General Assembly, having invoked the general welfare of the citizenry and faced with a potential multitude of sexual offenders currently imprisoned or released from imprisonment, could rationally conclude that separating current inmates from released offenders would facilitate the logistical task of identifying and forwarding to the court those offenders who might qualify as sexual predators. The General Assembly's decision to delegate the screening authority to the Department of Correction and Rehabilitation suggests that the department may have been the most convenient agency to conduct the screening process since it had ready access to the criminal records of those offenders housed within the state prison system.

There may be other reasons justifying the General Assembly's decision to exclude released offenders from R.C. Chapter 2950, but the rational-basis test does not require that we set them out. The reasons we have listed more than adequately set forth a rational basis for differentiating released offenders from current inmates, a conclusion joined by other appellate courts in this state. See, *e.g., State v. Jameson, supra; State v. Gropp* (Apr. 8, 1998), Lorain App. No. 97CA006744, unreported, 1998 WL 162853; *State v. Nicholas* (Apr. 6, 1998), Warren App. No. CA97–05–045, et al., unreported, 1998 WL 166436; and *State v.*

*Lewis* (Mar. 20, 1998), Hamilton App. No. C970289, unreported, 1998 WL 131555. We hold that R.C. Chapter 2950 does not violate defendant's right to equal protection under the law. The fourth assignment of error is overruled.

"V. Application of the 'clear and convincing evidence' standard in appellant's H.B. 180 hearing violates equal protection, guaranteed by the Fourteenth Amendment of the United States Constitution, and due process, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution."

In his fifth assignment of error, defendant raises another equal protection argument—that the clear and convincing evidence standard in the sexual predator hearing for those offenders currently imprisoned creates a different classification from those offenders indicted with a sexual predator specification and entitled to have a jury determine the specification by proof beyond a reasonable doubt.

Defendant's argument misstates R.C. Chapter 2950 because there is no "sexual predator specification" contained in that chapter. There is a "sexually *violent* predator specification" contained in R.C. 2971.01(I) that applies to those who have been convicted of a sexually violent offense (certain murders, assaults, or kidnappings that contain a sexual motivation) and who are likely to commit another sexually violent offense in the future. See R.C. 2971.01(H)(1) and (L).

Unlike the remedial aspects of a sexual predator determination, the provisions of the sexually violent predator specification are penalty provisions which enhance an offender's sentence. R.C. 2971.03 provides penalties ranging from life without parole (R.C. 2971.03[A][1], [2], and [4] ) to indefinite sentences (R.C. 2971.03[A][3] ). Other aspects of the statute prohibit judicial release (R.C. 2971.03[C][1] ) and eligibility for parole (R.C. 2967.13[M] ).

Because there are punitive aspects of the sexually violent predator specification, the law requires that, like any other specification, those aspects be determined by proof beyond a reasonable doubt. This is in direct contrast to the nonpunitive notice and registration requirements of the sexual predator law, which need only be established by clear and convincing evidence. Clearly, two separate classes of offenders exist, so there is a rational basis to distinguish between them. Defendant's equal protection argument must fail. The fifth assignment of error is overruled.

"VI. H.B. 180 is void for vagueness since it compels a court to make a preponderance determination based upon clear and convincing evidence."

The sixth assignment of error complains that R.C. Chapter 2950 is void for vagueness because it compels a court to make a preponderance determination based upon clear and convincing evidence. Defendant argues that the R.C. 2950.09(E) task of judging by clear and convincing evidence whether an offender

is "likely" to commit a sexually oriented offense in the future illogically asks the court to determine whether it is highly probable (based on the clear-and-convincing-evidence standard) that a mere probability exists.[3]

The Due Process Clause of the Fifth Amendment[4] requires that a criminal statute be found "unconstitutionally vague if it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by [the] statute.'" *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115, quoting *United States v. Harriss* (1954), 347 U.S. 612, 617, 74 S.Ct. 808, 811–812, 98 L.Ed. 989, 996. In *Grayned v. Rockford* (1972), 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222, 227, the United States Supreme Court explained that vague laws offend several important values:

"First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them."

Hence, when a statute is challenged under the due process doctrine of vagueness, a court must determine whether the enactment (1) provides sufficient notice of its proscriptions and (2) contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement. *Smith v. Goguen* (1974), 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605.

The void-for-vagueness doctrine is applicable in this case, if at all, under the subgrouping of statutes that might be said to lack specific standards for enforcement. Defendant complains that courts are required "to determine if it is highly probable that a mere probability exists that a future sex offense will occur"—not a meaningful quantum of evidence in defendant's view.

We do not find the clear and convincing standard of proof to be unconstitutionally vague applied in R.C. 2950.09(B)(3). In *Perez v. Cleveland*

---

3. This issue raised in this assignment is somewhat different from the void-for-vagueness issues raised in other cases that challenge the factors set forth in R.C. 2950.09(B)(2) as being vague. We note that every court considering the issue has rejected a vagueness argument on those grounds. See, e.g., *State v. Chappell, supra; State v. Lance, supra; State v. Ramsey* (Dec. 22, 1997), Clermont App. No. CA97–03–025, unreported, 1997 WL 786198; *State v. Gropp, supra.*

4. The void-for-vagueness doctrine has an analog in First Amendment jurisprudence, not applicable in this case, in which the courts strike down statutes which burden speech in terms that are so vague as either to include protected speech in the prohibited conduct or leave a person without clear guidance as to what kind of speech can be punished. See, e.g., *Smith v. Goguen* (1974), 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605; *In re Complaint Against Harper* (1996), 77 Ohio St.3d 211, 222, 673 N.E.2d 1253, 1262–1263.

(1997), 78 Ohio St.3d 376, 378–379, 678 N.E.2d 537, 540, the Supreme Court stated:

"The void-for-vagueness doctrine does not require statutes to be drafted with scientific precision. Nor does the doctrine require that every detail regarding the procedural enforcement of a statute be contained therein. Instead, it permits a statute's certainty to be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every reasonable interpretation in favor of finding the statute constitutional."

Two separate concepts are embodied in defendant's argument—the likelihood of future conduct and burden of proof required to ascertain whether that future conduct will occur. The likelihood of future conduct and the burden of proof are conceptually distinct ideas that do not conflict in a way that would make the statute unconstitutionally vague.

The court is charged with determining the likelihood that an offender will commit a sexual offense in the future. The word "likely" has a common usage that suggests, as defendant agrees, something more probable than not. In other words, the court must consider whether is it probable that the offender, once released from imprisonment, will commit another sexually oriented offense.

This assessment of probability is both conceptually and practically distinct from the burden of proof. A "burden of proof" is the duty imposed placed on the party who is legally required to persuade a trier of fact that the party is entitled to some form of legal redress. In this case, the clear-and-convincing-evidence standard required the state to present evidence that would give the court a firm belief or conviction that defendant was likely to commit another sexually oriented offense in the future.

We find that it is not a logical inconsistency to show a probability of a future event by clear and convincing evidence. There is nothing vague about the clear and convincing standard of proof and its application to the issue whether an offender is likely to commit a sexually oriented offense in the future. The sixth assignment of error is overruled.

"VII. H.B. 180 is an unconstitutional bill of attainder."

The seventh assignment of error challenges R.C. Chapter 2950 as being an unconstitutional bill of attainder. Citing the historic roots of the bill, defendant argues that the registration and notification provisions of R.C. Chapter 2950 codify the will of a legislative "lynch mob," whose only goal, in pandering to an inflamed popular constituency, is to single out sexual predators as a class of persons deserving of punishment and revocation of important individual rights.

Sections 9 and 10, Article I of the United States Constitution, prohibit the federal government or any state from passing a bill of attainder. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision for the protections of a judicial trial." *Nixon v. Adm. of Gen. Serv.* (1977), 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867, 907; *Selective Serv. Sys. v. Minnesota Public Interest Research Group* (1984), 468 U.S. 841, 846–847, 104 S.Ct. 3348, 3351–3352, 82 L.Ed.2d 632, 639–640. The rationale behind the prohibition against bills of attainder is to uphold the separation of powers—punishment is inherently a judicial function and must be performed by the judiciary, not a legislature with inherent political leanings and a desire to respond to the popular will. See *Richmond v. J.A. Croson Co.* (1989), 488 U.S. 469, 513–514, 109 S.Ct. 706, 732–733, 102 L.Ed.2d 854, 894–896; *United States v. Brown* (1965), 381 U.S. 437, 442, 85 S.Ct. 1707, 1711–1712, 14 L.Ed.2d 484, 488. Hence the requirement that legislatures pass laws of general applicability, not laws directed at specific individuals. *Landgraf v. USI Film Products* (1994), 511 U.S. 244, 266, 114 S.Ct. 1483, 1497–1498, 128 L.Ed.2d 229, 252–253.

The determination that an offender is likely to commit a sexually oriented act in the future is not a legislative determination of guilt, nor does it single out identifiable individuals and summarily punish them for past conduct.

The prime component of any claim that a law constitutes a bill of attainder is legislative punishment directed at specific individuals, and defendant cannot make the claim that R.C. Chapter 2950 imposes punishment. The provisions of R.C. Chapter 2950 are remedial, not punitive, in nature. In *State v. Cook,* the Supreme Court stated that "R.C. Chapter 2950, on its face, clearly is not punitive because it seeks to 'protect the safety and welfare of the people of this state,' which is a 'paramount governmental interest.'" *Cook,* 83 Ohio St.3d at 417, 700 N.E.2d at 581, quoting R.C. 2950.02(A)(2) and (B). Moreover, *Cook* noted that registration and notification requirements have "'never been regarded as punishment when done in the furtherance of legitimate governmental interest.'" *Id.* at 419, 700 N.E.2d at 583, quoting *E.B. v. Verniero* (C.A.3, 1997), 119 F.3d 1077, 1100; see, also, *Nixon v. Adm. of Gen. Serv., supra* (federal statute providing for seizure of presidential papers not intended as punishment, but as a means of preserving information); *Roe v. Farwell* (D.Mass.1998), 999 F.Supp. 174, 193.

Accordingly, we find that the absence of any punitive element in R.C. Chapter 2950 necessarily precludes the statute from being an unconstitutional bill of attainder. The seventh assignment of error is overruled.

"VIII. H.B. 180, as applied to appellant, constitutes double jeopardy, in violation of the Fifth Amendment of the United States Constitution and Art 1, Sec. 10 of the Ohio Constitution."

■ The eighth assignment of error complains that the registration and notification provisions of R.C. Chapter 2950 constitute a second punishment for the underlying sexually oriented offense, thus violating the Double Jeopardy Clause's ban on being twice punished for the same offense. While acknowledging that recent precedent has "broadened the class of civil sanctions that do not constitute double jeopardy," defendant argues that those cases involve *in rem* proceedings against property, not *in personam* proceedings like those involved under R.C. Chapter 2950 and which directly affect "a person"; consequently, he maintains those cases cannot stand as precedent for finding the notice and registration requirements of R.C. Chapter 2950 constitute a second "punishment."

■ Both the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide that no person shall be twice put in jeopardy for the same offense. The Fifth Amendment right against double jeopardy, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland* (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, is coextensive with the Ohio constitutional provision against double jeopardy. *State v. Gustafson* (1996), 76 Ohio St.3d 425, 432, 668 N.E.2d 435, 441.

■ The Double Jeopardy Clause embodies three basic protections: (1) it protects against a second prosecution for the same offense after acquittal, (2) it protects against a second prosecution for the same offense after conviction, and (3) it protects against multiple punishments for the same offense. *Grady v. Corbin* (1990), 495 U.S. 508, 516, 110 S.Ct. 2084, 2090–2091, 109 L.Ed.2d 548, 560–561, citing *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–2077, 23 L.Ed.2d 656, 664–665.

The applicable double jeopardy component in this appeal is multiple punishment, and as with our previous analysis of defendant's bill of attainder claim, we find on authority of *State v. Cook* that R.C. Chapter 2950 is not punitive. Defendant therefore fails to show a crucial element in his double jeopardy argument—that he has been subjected to multiple punishments.

The only issue remaining for our consideration is whether the *in personam* nature of the sexual predator law constitutes a significant difference from the *in rem* forfeitures validated by double jeopardy law.

In *Kansas v. Hendricks* (1997), 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501, the United States Supreme Court considered a very similar claim to that presented here: whether the postconviction civil confinement provisions of a Kansas sexual predator law constituted double jeopardy. The United States Supreme Court found the Kansas statute requiring the actual confinement of a

person found likely to commit further sexual offenses to be remedial in nature rather than punitive.

If the Kansas statute requiring involuntary *confinement* of a person found likely to commit future sexually oriented offenses could be validated (the ultimate in *in personam* punishment), then the less onerous registration and notification requirements of R.C. Chapter 2950 must pass constitutional muster.

We hold that the notice and registration requirements of R.C. Chapter 2950 do not place defendant in double jeopardy. In doing so, we note that our holding here is consistent with a number of appellate districts in this state that have considered the issue. See, e.g., *State v. Bartis* (Dec. 9, 1997), Franklin App. No. 97AP05–600, unreported, 1997 WL 771021; *State v. Lyttle* (Dec. 22, 1997), Butler App. No. CA97–03–060, unreported, 1997 WL 786216; *State v. Kimble* (Feb. 4, 1998), Lorain App. No. 97CA006730, unreported, 1998 WL 65487; *State v. Lance, supra; State v. Goode* (Mar. 27, 1998), Miami App. No. 97–CA–14, unreported, 1998 WL 404026; *State v. Naegele* (Jan. 12, 1998), Clermont App. No. CA97–04–043, unreported, 1998 WL 8684. The eighth assignment of error is overruled.

"IX. The public notification provisions of H.B. 180, as applied to appellant, violate appellant's constitutional right to privacy."

The ninth assignment of error complains that the notice (not the registration) requirements of R.C. Chapter 2950 violate defendant's right to privacy.

▋ Notification requirements for criminal offenders do not violate any fundamental right to privacy. In *State v. Jones* (1990), 49 Ohio St.3d 51, 53–54, 550 N.E.2d 469, 470–472, the Supreme Court held that a person, by reason of a conviction, enjoys a reduced expectation of privacy; therefore, substantive due process claims about the release of information concerning prior convictions have been routinely rejected.

For example, in *Paul v. Davis* (1976), 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, Davis, who had been arrested for but not convicted of shoplifting, brought a civil rights action against police officers who distributed his photograph to area merchants in an effort to alert those merchants to "active shoplifters." In rejecting Davis's argument that his right to privacy had been violated, the court noted that it had extended privacy protection to fundamental rights only, and stated:

"Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere intended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like

this, and we decline to enlarge them in this manner." 424 U.S. at 713, 96 S.Ct. at 1166, 47 L.Ed.2d at 421. See, also, *Mullins v. Griffin* (1991), 78 Ohio App.3d 84, 603 N.E.2d 1133; *Wilson v. Patton* (1988), 49 Ohio App.3d 150, 551 N.E.2d 625 (arrest records not protected by a constitutional right to privacy).

█ Even had defendant properly asserted a right to privacy, that right would only extend to personal information, not information available to the public. *Russell v. Gregoire* (C.A.9, 1997), 124 F.3d 1079, 1094. R.C. 2953.36 provides that certain sexual offenders, including those who committed rape, may not have the record of their convictions expunged. R.C. 2953.36 suggests that the General Assembly decided to protect society from sexual offenders by making the criminal records of those convicted of sex crimes available to the public. See *State v. Davenport* (1996), 116 Ohio App.3d 6, 12, 686 N.E.2d 531, 534–535. The General Assembly's intent when enacting R.C. Chapter 2950, expressed in R.C. 2950.02(A), states just that concern:

"(5) A person who is found to be a sexual predator or a habitual sex offender has a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government.

"(6) The release of information about sexual predators and habitual sex offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems as long as the information released is rationally related to the furtherance of those goals."

The need to protect the public from sex offenders is a legitimate state interest. See *Artway v. Atty. Gen.* (C.A.3, 1996), 81 F.3d 1235, 1267–1268; *State v. Lance, supra; State v. Gropp, supra.* This interest is made even more compelling with the determination that an offender is likely to commit a future sexually oriented offense. These important concerns, coupled with no showing that a right to privacy has been involved, convince us that no infringement on defendant's right to privacy is implicated by the notification provisions of R.C. Chapter 2950. The ninth assignment of error is overruled.

"X. H.B. 180, with its legislated stigma of public notification, constitutes cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution and Art. I, Sec. 9, of the Ohio Constitution."

█ The tenth assignment of error complains that the registration and notice requirements of R.C. Chapter 2950 constitute cruel and unusual punishment. Defendant argues that the "badge of ignominy" placed upon offenders after the completion of their lawful sentences is "inconsistent with the dignity of man" and amounts to a form of branding criminals.

The Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution provide that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The prohibition against cruel and unusual punishment is applicable only if the government imposition is in the nature of punishment, and if the punishment is "grossly disproportionate to the severity of the crime." *Ingraham v. Wright* (1977), 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711, 728.

As with the bill of attainder and double jeopardy arguments asserted by defendant, we find on authority of *State v. Cook* that the notification and registration requirements are remedial in nature, not punitive. Since R.C. Chapter 2950 does not mete out punishment, it follows that there is no violation of defendant's right against cruel and unusual punishment. 83 Ohio St.3d 404, 700 N.E.2d 570. The tenth assignment of error is overruled.

"XI. Application of H.B. 180 to appellant, who pled guilty to offenses prior to the effective date of this legislation, violated appellant's due process rights and Crim.R. 11, since he could not have been informed of the registration/notification consequences of his plea at the time of his plea."

The eleventh assignment of error complains that defendant's guilty plea, entered before the effective date of the registration requirements of R.C. Chapter 2950, could not be knowing and voluntary since he could not have been informed of the consequences of his plea at the time he pleaded guilty as part of a plea bargain to felonious sexual penetration.

The Due Process Clause of the United States Constitution requires that pleas of guilty or no contest be both knowing and voluntary. *Parke v. Raley* (1992), 506 U.S. 20, 28–30, 113 S.Ct. 517, 522–524, 121 L.Ed.2d 391, 402–404. To that end, Crim.R. 11(C)(2) states that before accepting a guilty plea, the trial court must inform the offender that by pleading guilty, the offender is waiving certain rights. Compliance with Crim.R. 11 need not always be strict—in some circumstances, a plea will be considered knowing and voluntary as long as the court substantially complies with Crim.R. 11. *State v. Stewart* (1977), 51 Ohio St.2d 86, 92–93, 5 O.O.3d 52, 55–56, 364 N.E.2d 1163, 1166–1167. "Substantial compliance" means that under the totality of the circumstances the defendant subjectively understands the consequences of the plea and the nature of the rights being waived. *State v. Nero* (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474, 476–477, citing *Stewart, supra; State v. Carter* (1979), 60 Ohio St.2d 34, 38, 14 O.O.3d 199, 201, 396 N.E.2d 757, 759–760.

The "consequences" which the court is required to outline for an offender in a Crim.R. 11 colloquy are those that have a "definite, immediate and automatic effect on the sentence." See *State v. Moore* (Aug. 27, 1998), Cuyahoga App. No.

73899, unreported at 1, 1998 WL 546129. The rationale behind this statement of law is straightforward—the permutations of different laws, not only in Ohio but throughout the country, applied to different facts arising in each case, would make it impossible for any trial court to apprise an offender of every possible circumstance that might affect an offender's decision to plead guilty. See *State v. Hill* (July 24, 1998), Montgomery App. No. 16791, unreported, at 2, 1998 WL 412458; *State v. Kenney* (May 22, 1998), Hamilton App. No. C–970443, unreported, 1998 WL 258447.

 A consequence of a guilty plea is indirect when the consequences of the plea are subject to discretionary implementation after the plea is submitted. *United States v. Wills* (C.A.9, 1989), 881 F.2d 823, 825. The rationale behind this rule is likewise self-evident—a discretionary act necessarily implies action may be conditional, not certain. Crim.R. 11 only requires the court to advise an offender of certainties, not probabilities.

In *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 282, 525 N.E.2d 805, 808, the Supreme Court stated that "felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." The Supreme Court explained that the ban on retroactive laws will only apply to past offenses that created a reasonable degree of finality. The Supreme Court went on to hold that "past felonious conduct is not such a transaction or consideration." *Id.*

As a convicted felon, defendant had no reasonable expectation at the time of his plea to think that the General Assembly would not thereafter pass some legislation relating to sexually oriented offenses. When the General Assembly did pass legislation relating to sexually oriented offenders, the consequences of that legislation, registration and notice, were remedial, not criminal in nature; hence, they were truly collateral to the underlying criminal offense as they imposed no further penalty on defendant. See *Roe v. Farwell, supra,* 999 F.Supp. at 182–183.

 In any event, as applied to offenders who committed a sexually oriented offense before the effective date of R.C. Chapter 2950, the court is not bound by any recommendation made by the Department of Rehabilitation and Correction and has discretion pursuant to R.C. 2950.09(C)(2) to reject any recommendation without a hearing. This discretion necessarily means that a sexual predator determination is a collateral, not direct, consequence of any guilty plea on an underlying sexual offense. Because the consequences in this case were collateral, we hold that the court had no duty pursuant to Crim.R. 11 to inform defendant of possible registration and notice requirements, and defendant's guilty plea cannot be said to be involuntary. The eleventh assignment of error is overruled.

The judgment is affirmed in part and reversed in part and the matter is remanded.

*Judgment accordingly.*

JAMES D. SWEENEY and KILBANE, JJ., concur.