JOURNAL ENTRY and OPINION
Defendant-appellant Robert Kennedy appeals from the trial court's judgment which classified him as a sexual predator. We find no merit to the appeal and affirm.
Kennedy was indicted in 1982 for one count of rape (R.C. 2907.02), one count of gross sexual imposition (R.C. 2907.05), and one count of possession of criminal tools (R.C. 2923.24). Subsequently in 1982, Kennedy was indicted on one additional count of rape. These indictments were based on the defendant's rape of his stepdaughter and niece, both of whom were thirteen years old.
Kennedy pled guilty to one count of rape and the remaining charges were nolled. He was sentenced to seven to twenty-five years in prison.
In August 2000, pursuant to House Bill 180 and R.C. 2950, a sexual predator hearing was conducted. At the hearing, the State introduced several exhibits: the journal entry from Kennedy's sentencing; Kennedy's 1992 discharge report from the Polaris Program at Chillicothe Correctional Institution; Kennedy's 1991 preparole psychological evaluation; and the 1982 police statements of the victims. In addition to the State's evidence, the court admitted a report by the Court Psychiatric Clinic dated August 9, 2000 that was compiled for the sexual predator hearing, and Kennedy's presentence investigation report.
Based on the evidence submitted, the trial court found all but one of the factors listed in R.C. 2950.09(B) were present and found Kennedy to be a sexual predator.
Kennedy appeals, asserting four assignments of error.
 I. THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT APPELLANT IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES.
Defendant argues that the trial court's finding Kennedy to be a sexual predator was not supported by clear and convincing evidence because the recent psychological report indicated that testing done on Kennedy indicated that he was at a low risk of reoffending and only a moderate concern.
A sexual predator is defined in R.C. 2950.01(E) as a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Before declaring an offender a sexual predator, the court must find by clear and convincing evidence that an offender is likely to commit a sexually oriented offense in the future. R.C.2950.09(B)(3).
Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal, State v. Eppinger (2001), 91 Ohio St.3d 158, 164, citing Cross v. Ledford (1954), 161 Ohio St. 469, 477. In reviewing a trial court's decision based upon clear and convincing evidence, an appellate court must examine the record to determine whether sufficient evidence exists to satisfy the requisite degree of proof. State v. Schiebel (1990), 55 Ohio St.3d 71,74.
Pursuant to R.C. 2950.09(B)(2), in making a determination as to whether an offender is a sexual predator, the trial court must consider all relevant factors, including but not limited to those factors enumerated in the statute. The factors in the statute are as follows:
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
The evidence indicated that from 1981 to 1982 Kennedy engaged in sexual intercourse with his stepdaughter and niece who were thirteen years old. The sexual encounters involved imbibing the victims with alcohol; playing games of strip poker; and forcing the girls to engage in oral, vaginal and anal sex under the threat of being shot. Fifty-nine nude photographs of the girls were also found in a metal box in Kennedy's closet. Kennedy's niece indicated that he began abusing her when she was twelve years old. Both of the girls' victim impact statements indicated that he molested them about twenty-five to thirty times.
The presentence investigation report indicated that Kennedy had a prior conviction from 1967 for abduction for immoral purposes. This incident involved Kennedy's sixteen-year-old former sister-in-law. Kennedy admitted that he had sexual intercourse with this girl several times. He also had prior convictions from 1966 for disorderly conduct involving an incident with a prostitute, and for carrying a concealed weapon.
The 1991 preparole report stated in pertinent part, He presents a facade of openness, however, underneath is evidence of sexual preoccupation, masculinity concerns * * *. It also stated, He is viewed as having the psychosexual disorders of pedophilia and sexual sadism; and, Kennedy should not become involved in relationships where young children are present.
In July 1992, a Polaris discharge report was completed on Kennedy. At the time of his review, he had completed an extensive sexual offender program. The examiner noted that even after this therapy, Kennedy was not being truthful about what occurred during the sexual offenses and the examiner is also suspicious that this behavior has been going on longer than Kennedy will admit and involves, also, other victims. The examiner concluded that Kennedy regresses to pedophilia under the influence of perceived rejection; and certainly, any situation involving young females is to be avoided.
The August 2000 thirteen-page report, prepared by Dr. Aronoff in anticipation of the sexual predator hearing, contained the results of the tests conducted on Kennedy to determine his risk of reoffending. The results of his STATIC-99 test indicated that he was in the low risk category for reoffending. He had a six percent chance of reoffending after five years; a seven percent risk at ten and fifteen years.
The results of the Abel Assessment for Sexual Interest test indicated that Kennedy registered a moderate concern to girls thirteen years old and younger, which apparently means that Kennedy reports fantasy without action towards these girls. It was also noted that his Relapse Prediction Score was within the 13th percentile (meaning he scored higher than 13% of all test subjects) which is almost one standard deviation below the mean.
Even with all the therapy Kennedy allegedly received, Dr. Aronoff indicated that he claims young girls are `attracted' to him and that his victims encouraged me to do it. Kennedy also adamantly denied having ever forced or coerced another to engage in sexual behavior. His version of the offenses was that his niece would purposely lose at strip poker so that she could go into his bedroom with him. The report indicates that Kennedy also denies ever having sexual intercourse with the girls and claims to have only fondled and engaged in oral sex about five times with his niece. He denied any sexual contact occurred with his stepdaughter and also denied threatening the victims with a gun.
Dr. Aronoff refused to state whether Kennedy was in fact a sexual predator and explicitly left that determination for the trial court.
The trial court reviewed all of the above evidence and found the following factors listed in R.C. 2950.09(B)(2) were present: multiple victims of a young age; alcohol was used to impair the victims; there was a pattern of demonstrated abuse with the victims; cruelty was displayed by the defendant by his threatening to shoot the girls; the victims involved were of a special relationship to the defendant indicating a violation of their trust; and a prior sexual offense. The trial court then concluded:
 As has been indicated, several factors are met and there is not enough in the Court's Psychiatric Clinic report of 8-9-2000 to overcome the fact that most of the factors have been met. In fact, I think the only factor that hasn't been met is the mental illness factor.
 That, of course, means that there is clear and convincing evidence that Mr. Robert Kennedy is a sexual predator.
(TR. 43-44).
Based on a review of the record we cannot say that the trial court's finding is based on insufficient evidence. Although the tests conducted on Kennedy indicated he was at a low risk of reoffending and posed only a moderate concern, this evidence must be considered in conjunction with the other evidence presented. The failure to do so would force the trial court to accept the conclusions of psychologists, despite the presence of other overwhelming evidence contrary to those conclusions. State v. Barrett (May 5, 2000), Hancock App. No. 5-99-60, unreported.
Furthermore, Dr. Aronoff's report also indicated that Kennedy still perceives that young girls are attracted to him and also places blame on his victims for his sexual molestation. Based on these observations alone, the trial court could have rejected the test results. See, State v. Gardner (Nov. 16, 2000), Franklin App. No. 00AP-93, unreported.
Defendant's first assignment of error is overruled.
 II. THE TRIAL COURT ERRED WHEN IT DECIDED TO CONDUCT THE SEXUAL PREDATOR HEARING AGAINST THE APPELLANT WHERE THE APPELLANT WILL NOT BE RELEASED FROM PRISON FOR AT LEAST TEN YEARS IN VIOLATION OF THE REVISED CODE AND BOTH THE OHIO AND UNITED STATES CONSTITUTION.
Defendant argues that conducting the sexual predator hearing so far in advance of his release from prison violates his right to due process.
This issue was rejected by this court in State v. Steele (Sept. 7, 2000), Cuyahoga App. No. 76205, unreported, where we noted that substantive due process was satisfied where the person adjudicated a sexual predator has the option of petitioning, within one year prior to his release from prison, for a determination that he is no longer a sexual predator. See, R.C. 2950.09(D). See, also, State v. Abelt (May 31, 2001), Cuyahoga App. No. 77754, unreported; State v. Gibson (Dec. 7, 2000), Cuyahoga App. No. 76875, unreported; State v. Manson (Nov. 2, 2000), Cuyahoga App. No. 76716, unreported.
Defendant's second assignment of error is overruled.
 III. THE APPELLANT'S HEARING VIOLATED THE CONCEPTS OF SEPARATION OF POWERS BECAUSE THE TRIAL COURT RELIED ON EX PARTE KNOWLEDGE AND INVESTIGATED, PROSECUTED AND ALSO ADJUDICATED THE APPELLANT TO BE SEXUAL PREDATORS [sic].
 IV. THE ADJUDICATION PROVISIONS VIOLATE THE DUE PROCESS CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1
OF THE OHIO CONSTITUTION, BECAUSE OHIO'S CLASSIFICATION SCHEME IS SYSTEMICALLY FLAWED.
The separation of powers and due process arguments raised in these assignments of error were rejected by this court in State v. Abelt, (May 31, 2001), Cuyahoga App. No. 77754, unreported; State v. Manson (Nov. 2, 2000), Cuyahoga App. No. 76716, unreported; and State v. Ward (1999),130 Ohio App.3d 551.
Defendant's third and fourth assignments of error are overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _____________________________ COLLEEN CONWAY COONEY, JUDGE:
MICHAEL J. CORRIGAN, J., and KENNETH A. ROCCO, P.J., CONCUR.