DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas in which the trial court found that appellant, Robert Wortham, is a sexual predator. For the reasons that follow, we affirm the judgment of the trial court.
On appeal, appellant sets forth the following three assignments of error:
 "Assignment of Error No. 1: The trial judge demonstrated partiality in its questioning of Dr. Wayne Graves, a witness called by the state of Ohio, in violation of Evid.R. 614(B) and of appellant's right to fair trial and due process, thereby rendering its ultimate decision, that appellant is a sexual predator, unreliable.
 "Assignment of Error No. 2: The appellant was denied the effective assistance of counsel when his attorney failed to object to the trial judge's demonstrated partiality in questioning Dr. Wayne Graves, and failed to seek recusal of the judge prior to his rendering his decision.
 "Assignment of Error No. 3: The trial court's finding that appellant is a sexual predator is not supported by clear and convincing evidence in violation of appellant's right to due process and is against the manifest weight of the evidence."
On May 21, 1976, appellant and three other armed men burglarized an occupied home. During the course of the burglary, the male owner of the home and his young son and teenage daughter were bound and threatened at gunpoint. In addition, the forty-five year old female owner of the home was forced to kneel, face down, on her bed while three of the intruders took turns raping her at gunpoint. On June 28, 1976, appellant, again armed with a gun, entered the home of an elderly couple. When the elderly man attempted to stop appellant from robbing his home, appellant shot him in the chest, killing him instantly. At the time these two separate crimes occurred, appellant was 20 years old.
In August 1976, appellant was indicted by the Lucas County Grand Jury on one count each of grand theft, rape, aggravated burglary and aggravated robbery for the May 21 incident, and one count of murder while committing an aggravated burglary for the June 28 incident. In February 1977, appellant entered a plea of guilty to rape and aggravated robbery as part of a plea bargain that also encompassed the murder charge. The two counts of aggravated burglary and grand theft were dismissed. Appellant was sentenced to consecutive terms of six to twenty-five years for aggravated robbery, seven to twenty-five years for rape, and life imprisonment for murder. He was incarcerated at the North Center Correctional Institution ("NCCI") in Marion, Ohio. In 1996, appellant was denied parole. Appellant will next be eligible for parole in 2016, when he is 60 years old.
On April 14, 1997, the warden of NCCI recommended to the trial court that appellant be adjudicated a sexual predator pursuant to R.C.2950.09(C). On June 28, 2001, the trial court held a hearing at which it determined that appellant was indigent and appointed him counsel. In addition, the court referred appellant to Timothy Wynkoop, Ph.D. at the Court Diagnostic Treatment Center ("CDTC") for an evaluation. On July 31, 2001, at appellant's request, the court referred appellant to Wayne Graves, Ph.D., for a second evaluation. On August 28, 2001, appellant asked the court for a hearing pursuant to R.C. 2950.09, based on conflicting results produced by the two evaluations.
On September 27, 2001, a hearing was held, at which testimony was presented by Wayne Graves, Timothy Wynkoop, and appellant. Dr. Graves testified that, based on his interview with appellant, his review of appellant's prior criminal record, appellant's prison record, and certain evaluations performed on appellant at CDTC, appellant has an antisocial personality disorder, displayed cruelty by threatening his victim with a gun during the rape, and is at a high risk for committing future violent crimes. However, Graves further testified that, in his opinion, the risk of appellant committing future sex offenses was not high enough to classify him as a sexual predator. Instead, Graves recommended to the court that appellant be classified as a sexually oriented offender. Graves cited, as the basis for his opinion, the lack of sex-related offenses in appellant's history prior to the rape, the twenty-five year time span since the rape, during which appellant had not committed additional sex-related offenses, the fact that the rape victim was not a minor, and the fact that appellant did not use drugs or alcohol to impair his victim during the rape.
At the close of Graves' testimony, he was further questioned by the trial court as to his educational background, professional experience and his opinion as to whether, pursuant to R.C. 2950.09, appellant could be classified as a sexual predator with a history of only one documented sexual offense. Graves replied that, in his opinion, appellant's crime was "an opportunistic rape," committed under circumstances during which appellant and his accomplices were interested in "getting away with as much stuff as they could." Graves further opined that, although appellant has gratuitous killing in his history and is fully capable of "gratuitous violence," including sexually acting out, he cannot say that it is "more likely than not" that such behavior would reoccur. Graves stated that he had not reviewed appellant's entire record from CDTC; however, such a review would not result in a change of his opinion.[1]
Dr. Wynkoop was then briefly questioned by the court as to his educational background and professional experience. Wynkoop stated that, in his opinion, appellant should be classified a sexual predator.
Appellant testified at the hearing, against the advice of counsel, that he was currently in prison for murder, having served his initial sentences for rape and aggravated burglary. He stated that feels "sorry" for his victims. Appellant further stated that he did not commit the rape in question and has committed no other sexual crimes. He said he did not participate in a sexual offender treatment program in prison because he does not "have that problem."
On cross-examination, appellant stated that he saw two of his accomplices rape the victim; however, he was not in the bedroom when the rape occurred. On redirect, appellant freely admitted to committing forty-plus crimes over the first twenty years of his life, including burglary and murder; however, he denied committing any sexual assaults.
On October 9, 2001, the trial court found appellant to be a sexual predator by "clear and convincing evidence." A timely notice of appeal was filed.
Appellant asserts in his first assignment of error that the trial court erred by demonstrating partiality in its questioning of Dr. Graves at the sexual predator determination hearing. In support thereof, appellant argues that he was deprived of a fair hearing in violation of his constitutional rights because the trial court attempted: (1) to influence Graves' testimony, albeit unsuccessfully, by asking "leading questions clearly indicating the desire for a particular result," i.e., an opinion from Graves that appellant is a sexual predator; and (2) not conducting a corresponding examination "in an effort to see if [Wynkoop] could be led to change or modify his opinion and admit that perhaps [appellant] should be classified as a sexually oriented offender."
Pursuant to Evid.R. 614(B), the court may interrogate any witness during a trial, so long as such interrogation is done "in an impartial manner." Id. "Absent a showing of bias, prejudice, or prodding of the witness to elicit partisan testimony, it is presumed that the trial court interrogated the witness in an impartial manner in an attempt to ascertain a material fact or develop the truth." State v. Blankenship
(1995), 102 Ohio App.3d 534, 548. The standard of review on appeal is whether, in its method of interrogating the witness, the court abused its discretion. State v. Davis (1992), 79 Ohio App.3d 450, 454.
In this case, the trial court engaged in the following relevant exchange with Dr. Graves concerning his professional opinion:
 "[THE COURT]: Now, with regards to this particular case you were shown certain reports that you did not have access to when you formed your initial opinion, correct?
"[GRAVES]: That's correct.
 "[THE COURT]: And I believe it's your testimony that having reviewed those reports they would not change your opinion that the defendant should be classified as a sexually oriented offender; is that correct?
"[GRAVES]: No, they would not.
 "[THE COURT]: That's even if you assume everything in those reports is true?
 "[GRAVES]: Even if I assumed all of those things in the reports are true, we have one offense that is documented as a sexual offense. From my perspective, even though Mr. Wortham is troubled, has chronic behavior difficulties and has a demonstrated pattern of felony activity, I do not think that he's appropriate as a sexual predator. That requires, in my opinion, a pattern.
 "[THE COURT]: Now, can you conceive of any situation where an individual would have only committed one sex offense where that person could be classified as a sexual predator as you understand the statutes that are involved here?
 "[GRAVES]: If — if there was one offense. But if he — if he revealed or demonstrated a pattern of other sexual deviance and that sexual deviance showed some pattern of development over time, I could see it as possible.
 "[THE COURT]: So if there was some pattern of sexual deviance that was there in the history. Just talking a single sex offender [sic], is it your opinion under the statute that no one could ever be a sexual predator if they're a first-time offender?
 "[GRAVES]: My opinion of the interpretation of the statute is that, no, as a first time offender it would not be possible to be a sexual predator.
 "[THE COURT]: Now, there are those who are of the opinion that sex offenses, in particular rapes, are motivated more by antisocial motivations as opposed to sexual gratification, correct?
"[GRAVES]: That's correct.
 "[THE COURT]: If I have a person who has a demonstrated antisocial, violent personality, isn't just this act of a sexual offense just a part of that pattern of antisocial conduct?
"[GRAVES]: It could be seen that way.
 "[THE COURT]: Then couldn't you infer from the fact that you have an individual who's violent, demonstrates an antisocial personality, that he will act out violently towards others whether this be sexually or otherwise in the future?
 "[GRAVES]: I am saying the risk of sexual — I'm sorry — a violent acting out is pretty high. I am much more reluctant to include sexual in it. In this particular case, if it was a rape, it seems as if it was more an opportunistic rape as in it occurred because the victim was available and there were three people there at the time, and it occurred in the course of what was really the purpose of the invasion of the home which was burglarizing it and getting away with as much stuff as they could.
 "[THE COURT]: Was that the purpose, or was the purpose here to inflict harm on others in addition to the crime?
 "[GRAVES]: Well, we're guessing about — we're guessing about criminal intent.
 "[THE COURT]: Didn't this man kill somebody in the commission of an aggravated burglary?
"[GRAVES]: Another aggravated burglary, correct.
 "[THE COURT]: Correct. He was an elderly man. It was a gratuitous killing.
"[GRAVES]: It was.
 "[THE COURT]: And isn't that same personality type capable of the same type of gratuitous violence whether it's a sexual acting out or just simply violence toward others?
"[GRAVES]: Yes.
 "[THE COURT]: Couldn't you infer that that kind of pattern of behavior, that that kind of individual would rape someone if he had the opportunity in the future?
 "[GRAVES]: I can infer. The question is whether I think it's more likely than not, and I don't think so."
We note initially that above-quoted exchange took place between the court and Dr. Graves during a sexual predator hearing, at which no jury was present. In addition, it is apparent from the context of the exchange that the court was asking Graves to explain the rationale for his determination that appellant should be classified as a sexually oriented offender, not a sexual predator. Such an inquiry is particularly appropriate in this case, where the trial court itself is the sole fact finder, and appellant has sought the opinion of the expert in question in order to refute another expert's opinion that appellant should be classified as a sexual predator.
Upon consideration of the foregoing, this court finds that the trial court did not display any obvious bias, prejudice, or improper impartiality in questioning Dr. Graves. Accordingly, the trial court did not abuse its discretion, and appellant's first assignment of error is not well-taken.
Appellant asserts in his second assignment of error that he received ineffective assistance of counsel at the sexual predator hearing because his appointed counsel did not object to the trial court's questioning of Dr. Graves and did not seek the judge's recusal.
In order to prove ineffective assistance of counsel, a defendant must show: 1) that defense counsel's representation fell below an objective standard of reasonableness; and 2) that counsel's deficient representation was prejudicial to the defendant's case. State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, Strickland v. Washington (1984), 466 U.S. 668, 694. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland, supra, at 687.
Upon consideration of our determination as to appellant's first assignment of error, we find that appellant has not demonstrated that he received ineffective assistance of trial counsel, and his second assignment of error is not well-taken.
Appellant asserts in his third assignment of error that the trial court's determination that he is a sexual predator is against the manifest weight of the evidence. In support thereof, appellant first argues that the record does not support the warden's determination that he be recommended for a sexual predator determination because the screening instrument erroneously states that there were two rape victims. Appellant further argues that the trial court's determination that he is a sexual predator is against the manifest weight of the evidence because he has no history of sexually "acting-out" other than the one rape offense.
Pursuant to R.C. 2950.09(C)(1), if a person was convicted of or pled guilty to a sexually oriented offense prior to January 1, 1997, and thereafter is serving a term of imprisonment in a state correctional institution, "the department of rehabilitation and correction shall determine whether to recommend that the offender be adjudicated as being a sexual predator." Id. However, the court is not bound by a recommendation from the department that an offender be so adjudicated. Id. The court may dismiss the recommendation without a hearing or conduct a sexual predator determination hearing in accordance with R.C.2950.09(C)(2).
In this case, the trial court elected to conduct a sexual predator determination hearing. At that hearing, evidence was presented as to the number of actual rape victims and the exact nature of appellant's sexually oriented offense. Any error that may have occurred in filling out the screening form was, therefore, cured by the trial court and rendered harmless.
As to appellant's second argument, pursuant to R.C. 2950.09(B)(3) and R.C. 2950.09(C)(2), the trial court shall determine whether an offender is a sexual predator by "clear and convincing evidence." In State v.Cook (1998), 83 Ohio St.3d 404, the Ohio Supreme Court found that R.C. Chapter 2950 is remedial in nature and not punitive. Accordingly, on appeal, the civil manifest weight standard of review applies, and this court will examine and uphold the finding of the trial court that the offender is a sexual predator if we find that the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof. See Cross v. Ledford (1954), 161 Ohio St. 469, 477.
A sexual predator is statutorily defined as a "person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). In making such a determination, the trial court is to consider all relevant facts including, but not limited to the following:
"(a) The offender's age;
 "(b) The offender's prior criminal record regarding all offenses, including but not limited to, all sexual offenses;
 "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 "(g) Any mental illness or mental disability of the offender;
 "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 "(j) Any additional behavioral characteristics that contribute to the offender's conduct." R.C. 2950.09(B)(2).
Ohio courts have held that, in cases where the evidence that a defendant is "likely to engage in the future in one or more sexually oriented offenses" relates only to the defendant's underlying conviction, such evidence is insufficient to support a finding that the defendant is a sexual predator. See State v. Ward (1999),130 Ohio App.3d 551, 561, citing State v. Hicks (1998),128 Ohio App.3d 647. However, the court is not limited to consideration of only the evidence supporting the underlying conviction. The statute directs the court to consider "all relevant factors" in making its determination. Such information may come from many sources, including reliable hearsay. Ward, supra at 562, citing State v. Cook (1998),83 Ohio St.3d 404. Accordingly, a review of other parts of the record, when considered along with the underlying conviction for a sexually oriented offense, may be sufficient to substantiate a sexual predator determination. Id.
In this case, the record included appellant's lengthy history as a juvenile offender, his guilty pleas to rape and aggravated burglary in this case, his conviction for murder, and the record of appellant's relatively poor conduct while in prison, which included several violations for substance abuse, more than one disciplinary violation, and his refusal to participate in a sexual offender treatment program. In addition, the record included the following documents, produced in 1975, 1976, and 1977, in conjunction with appellant's trial and sentencing in the instant case and in the murder case:
A report of a 1975 interview with appellant conducted by Robert W. Lewis, a social worker at CDTC, after appellant was released after serving a two year sentence for assaulting a police officer and resisting arrest. Lewis stated in his report that appellant, who was 19 years old at the time, "is a marked risk in the community if for no other reason simply because of his youth and his criminal history thus far." Lewis further noted that, even with appropriate treatment, "there would be no guarantees that Robert's course would be reversed and may be only like shooting BB's at a brick wall in hopes of knocking it down."
A report from Thomas Sherman, M.D., who interviewed appellant in 1977, prior to sentencing in the instant case, in which Sherman concluded that appellant is "self-centered, hedonistic, and brimming with anger." Sherman stated that, in his opinion, treating appellant in a psychiatric facility in lieu of imprisonment would be of no use to appellant, and would "be a terrible detriment to the community."
A second letter from Lewis to the court, written on March 23, 1977, in which Lewis stated that appellant's personality is hostile, and that he is "grossly selfish, hedonistic and `wants what he wants when he wants it,' * * * [and] is not beyond the use of force to aid in getting what he wants." Lewis concluded that CDTC personnel were "compelled to describe [appellant] as a psychopathic offender and * * * a continuing threat to the security of the community."
Finally, in addition to the testimony presented at the hearing by Wynkoop and Graves, the record contained written reports submitted to the court by both psychologists. Graves stated in his report that he based his opinion on an interview with appellant, psychological testing, appellant's prison record, and a summary of appellant's prior juvenile offenses and adult crimes. Graves' written conclusion, i.e., that appellant should not be classified a sexual predator based on only one prior sexually oriented offense, essentially mirrored his testimony at trial.
In his written report, Wynkoop stated that he based his opinion on an interview with appellant as to his personal and criminal history. Wynkoop also reviewed appellant's criminal record and prison disciplinary history, and his entire record from CDTC, which included the above-quoted evaluations of appellant made in 1975 prior to the instant offense and in 1976 and 1977 in connection with his plea and sentencing in this case. Wynkoop stated that he administered the Minnesota Multiphasic Personality Inventory-2 to appellant, and that the test results showed "strong indications of psychopathy with adherence to deviant social and/or political beliefs, and * * * some degree of emotional turmoil * * *."
Dr. Wynkoop concluded that, in his opinion, the burglary, rape and murder committed by appellant were part of "the bigger picture of predatory behaviors" in appellant's life. Wynkoop concluded that appellant is "at great risk to re-offend sexually in the future, given the right circumstances." Consequently, Wynkoop recommended in his written report and at the hearing that appellant be designated a sexual predator.
In this case, the trial court stated that it had reviewed the entire record as set forth above. Thereafter, the court listed the factors in favor of a sexual predator determination as appellant's lack of participation in a sexual offender treatment program while in prison; his poor institutional adjustment; his diagnosed anti-social personality disorder; and the cruelty and threats thereof displayed during the rape and the murder. The court further stated that factors mitigating against a sexual predator designation included the lack of impairment of appellant's victim by drugs or alcohol and his lack of any documentation of prior sexual oriented offenses. Finally, the court noted the disagreement between Drs. Wynkoop and Graves as to whether appellant is a sexual predator within the meaning of R.C. Chapter 2950.
In conclusion, the court stated:
 "I've considered and weighed all of the factors in this case. And I find that the factors require a finding that the defendant is a sexual predator. A consideration of these factors requires a finding that the defendant is a violent criminal predator whose past actions indicate that he is highly likely to commit violent crimes in the future. He is one of the most dangerous offenders I have encountered in my over thirty years as a juvenile defense lawyer, a prosecutor and as a judge. He has demonstrated that his motivations to commit crimes is not money or sexual gratification, but to inflict the maximum amount of harm on his victims.
 "He has murdered and he has raped and it is likely that he will engage in similar conduct in the future if he was released and if he has the opportunity."
Thereafter, the court found "based upon the factors listed in Section2950.09(B) and by clear and convincing evidence that [appellant] is a sexual predator."
Our review of the record in this case demonstrates that the trial court properly considered the elements set forth in R.C. 2950.09(B)(2). Although appellant has pled guilty to only one sexually oriented offense, the nature of that offense, when considered in light of appellant's lengthy criminal history, his poor disciplinary record in prison and the increasingly violent nature of his crimes prior to and after the rape, support the trial court's conclusion that appellant, if released from prison, is likely to engage in similar conduct in the future.
Upon consideration of the foregoing, we find that the record contains competent, credible evidence to support the trial court's determination that appellant is a sexual predator pursuant to R.C. 2950.01(E). The trial court's judgment that appellant is a sexual predator is not against the manifest weight of the evidence. Appellant's third assignment of error is not well-taken.
The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Court costs of the proceedings are assessed to appellant.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.
[1] It is not clear from the transcript exactly what evaluations were available to Dr. Graves before the sexual predator hearing. However, Graves stated on the record that he had access to the entire file before giving his testimony.