OPINION
{¶ 1} In this appeal Karl Wright ("Appellant") challenges a decision by the court of common pleas granting the State of Ohio's ("Appellee") motion to dismiss the matter based on the pleadings. In his complaint, Appellant sought declaratory judgment, specific performance, an evidentiary hearing and leave to withdraw his twenty-year-old guilty plea.
 {¶ 2} Appellant's pro se brief alleges eight assignments of error, all basically contesting the decision of the Ohio Adult Parole Board ("APA Board") to categorize him at a level 13 under the Adult Parole Authority's guidelines, instead of a level 11. According to Appellant, his sentence has been improperly extended because of the APA Board's higher assessment.
 {¶ 3} Whether or not it is possible that Appellant's challenge to the APA Board's decision, which realistically extended his prison term by several years has any merit, this Court has no choice but to affirm the trial court's dismissal of Appellant's complaint because Appellant failed to bring into his action the proper party in accordance with R.C. §2721.12. Further review of Appellant's additional claims and the record on which they are based reveal that they are either wholly lacking in merit or barred as res judicata.
 {¶ 4} On June 25, 1980, Appellant was indicted on aggravated murder and aggravated robbery charges in connection with the shooting death of Edward Ellis, a gas station attendant at the Star Service Station in Youngstown. The shooting occurred on April 19, 1980, during a botched attempt to rob the service station. After the shooting Appellant promptly surrendered to police and signed a written statement wherein he confessed his involvement in the crime. Appellant later sought to suppress various statements he made to police in the wake of the shooting alleging that they were the product of police coercion and he was under the influence of drugs and alcohol at the time. The trial court denied the motion to suppress.
 {¶ 5} On August 18, 1980, following plea negotiations, Appellee dismissed the aggravated robbery count and amended the aggravated murder charge under R.C. § 2903.01, by reducing it simply to murder as provided under R.C. § 2903.02. Appellant entered a guilty plea to the reduced charge and the trial court imposed a sentence of fifteen years to life imprisonment.
 {¶ 6} Appellant subsequently appealed his conviction to this Court alleging that the trial court erred when it failed to admonish him prior to accepting his guilty plea that he would be waiving his right to appeal the trial court's decision denying his motion to suppress. Alternatively, Appellant complained that trial counsel was ineffective for failing to fully advise him of the consequences of his plea. Concluding that there was no merit to Appellant's arguments, this Court affirmed his conviction and sentence in State v. Wright (April 9, 1981), 7th Dist. No. 80 C.A. 102.
 {¶ 7} Appellant filed a petition for post conviction relief seeking to vacate his conviction and guilty plea on grounds similar to those he raised in his direct appeal. In an order entered on November 30, 1983, the trial court dismissed the petition. On July 23, 1996, Appellant filed another petition for post-conviction relief, this one styled as a Motion for Termination of Imprisonment or Application to Order Suspension to Further Execution of Sentence, challenging both the quality of the legal representation that he received in the proceedings that led to his guilty plea and the actions of the APA Board taken since the time he entered that plea. On February 7, 1997, the court of common pleas dismissed that petition as well.
 {¶ 8} On August 16, 2000, the APA Board issued a decision that placed Appellant in an offense category of 13. With a criminal history/risk score of two, the APA Board's decision resulted in a parole guideline range of 330 months to life. (Appellant's Brf. Appendix Exh. D). With adjusted credit for what the APA Board characterized as "outstanding program achievement," the APA Board recommended Appellant for release sometime in June of 2004.
 {¶ 9} Based on the decision to place him in a higher offense category, Appellant filed a pleading in the court of common pleas entitled "Motion for Declaratory Judgment and/or Motion for an Evidentiary Hearing and/or Motion to Withdraw Plea per Crim. R. 32.1 and/or Specific Performance." This filing again challenged the circumstances surrounding his 1980 guilty plea and the action undertaken by the APA Board in the intervening years that, according to Appellant, resulted in an extension of his prison term to a period much longer than anticipated at the time he agreed to enter his guilty plea.
 {¶ 10} On April 4, 2001, the trial court granted Appellee's motion to dismiss under Civ.R. 12(B)(6). The court also denied Appellant's motion to withdraw his guilty plea as unjustifiable under Crim.R. 32.1. (Judgment Entry, April 4, 2001, Case No. 80 CR 505). Appellant filed a notice of appeal from that order on April 24, 2001.
 {¶ 11} In his first assignment of error Appellant complains as follows:
 {¶ 12} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DID NOT ORDER `SPECIFIC PERFORMANCE' OF THE PLEA BARGAIN AGREEMENT IN RE `10 YEARS', SIGNED CONTRACT, FOR PAROLE ELIGIBILITY, `10 YEAR MINIMUM MUST BE SERVED', WHEN PLACING APPELLANT IN A POST-1998 GUIDELINE CATEGORY, WHERE APPELLANT MUST SERVE `27½ YEARS TO LIFE', FOR CATEGORY `13', AGG MURDER, RATHER THAN `CATEGORY 11', FOR `210-270', `MURDER' CATEGORY, VIOLATING APPELLANT'S DUE PROCESS, EQUAL PROTECTION RIGHTS UNDER THE 14th AMENDMENT OF THE UNITED STATES CONSTITUTION, AND SECTION TEN, ARTICLE I OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 13} As Appellant is acting pro se, we will attempt to decipher from his confusing and somewhat inarticulate filing a cognizable argument. The gist of Appellant's first argument is that when the APA Board placed him in a guideline category of 13 for what it characterized as the offense of "aggravated murder," the APA Board violated the terms of his original plea agreement. The record indicates that although Appellant was initially charged with aggravated robbery and aggravated murder, Appellee dismissed both of those counts when Appellant entered his guilty plea to the crime of murder. Thus, Appellant argues that given the terms of his agreement, the APA Board should have placed him at a level 11, the level designated by the guidelines for the offense of murder.
 {¶ 14} The pleading Appellant filed in the trial court essentially requested an order directing the APA Board to comply with the terms of the plea bargain Appellant entered into more than twenty years ago. The trial court granted Appellee's motion to dismiss Appellant's complaint under Civ.R. 12(B)(6).
 {¶ 15} This Court subjects dismissals under Civ.R. 12(b)(6) to de novo review. Witcher v. Fairlawn (1996), 113 Ohio App.3d 214, 216,680 N.E.2d 799. Civ.R. 12(b)(6). Accordingly, this Court presumes that all factual allegations set forth in the complaint are true and will draw all reasonable inferences in favor of the non-moving party. Mitchell v.Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. The pleading threshold for complaints is fairly low. As a practical matter, a complaint merely needs to provide reasonable notice of the claim. Stateex rel. Edwards v. Toledo City School Dist. Bd. of Education (1995),72 Ohio St.3d 106, 109, 674 N.E.2d 799.
 {¶ 16} Dismissal is warranted only where it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Tucker v. Ohio Adult ParoleAuthority, 8th Dist. No. 80134, 2002-Ohio-1601; citing, State ex rel.Findlay Publishing Co. v. Schroeder (1996), 76 Ohio St.3d 580, 581,669 N.E.2d 835. Under R.C. § 2967.03, the APA Board's decision with respect to parole determinations is discretionary. Perotti v. Ishee
(Oct. 29, 2001), 7th Dist. No. 01 CA 88. As a consequence, a prisoner has no constitutional right to conditional release or parole before he completes a validly imposed sentence. State ex rel. Hattie v. Goldhardt
(1994), 69 Ohio St.3d 123, 630 N.E.2d 696.
 {¶ 17} In placing Appellant at a guideline level 13, the APA Board found as follows:
 {¶ 18} "Indicted for Agg. Robbery Agg. Murder pled guilty to Murder on 4/19/80. Inmate went to Service Station to set up Robbery of Station. Inmate displayed weapon to victim asked to use restroom entered the station. Victim entered station also. Victim inmate start wrestling inmate shot victim twice ran out of station. Victim dies of gunshot wound to right side of neck that perforated jugular vein resulting in massive external hemmorrhage (sic)." (Appellant's Brf. Appendix Ex. D at p. 1).
 {¶ 19} The APA Board's decision explicitly takes note of the fact that Appellant was originally indicted on charges of aggravated robbery and aggravated murder. The decision further reflects that the APA Board considered the facts underlying the dismissed charges before concluding that Appellant was properly categorized as a level 13 under the guidelines. Appellant complains that in so doing, the APA Board violated his agreement with Appellee.
 {¶ 20} Appellant's guilty plea resulted from negotiations with Appellee pursuant to Crim.R. 11(F). A plea agreement is contractual in nature and subject to contract law standards. State v. Stanley, 7th Dist. No. 99 C.A.55, 2002-Ohio-3017; and State v. Callahan (Oct. 6, 2000), 2nd Dist. No. 18237; citing State v. Butts (1996),112 Ohio App.3d 683, 685, 679 N.E.2d 1170. Agreements reached under Crim.R. 11(F) must be made a part of the record in open court.
 {¶ 21} Several courts of appeal have concluded that the APA Board, as an agent of the state, must honor the tenets of those plea agreements. Vendrick v. Ohio Adult Parole Auth., 8th Dist. No. 80030, 2002-Ohio-658; citing Randolph v. Ohio Adult Parole Auth. (Jan. 21, 2000), 2nd Dist. No. 99 CA 17 (appeal allowed by the Ohio Supreme Court and cause held for the decision in 2001-1253 and 2001-1266, Layne v. OhioAdult Parole Auth., 3rd Dist. No. 9-2001-06, 2001-Ohio-2222; briefing schedule stayed).
 {¶ 22} Accordingly, in Vendrick, supra, the reviewing court held that while the APA Board may have absolute discretion to decide whether to parole a particular offender and may be able to consider the circumstances surrounding the offense and whether the offender could have been convicted of a more serious crime but for his plea, it must begin its decision-making process by applying the guidelines for the crime for which the offender was actually convicted, not the crimes with which he was originally charged. Id. at *6; citing, Harris v. Wilkinson, 10th Dist. No. 01AP-598, 2001-Ohio-4052; Oswalt v. Ohio Adult ParoleAuthority (Oct. 4, 2001), 10th Dist. No. 01AP-363; Givens v. Ohio AdultParole Auth. (Sept. 22, 2000), 2nd Dist. No. 2000 CA 35; and Randolph, supra.
 {¶ 23} Nevertheless, the approach taken in Vendrick has not received universal acceptance. The Layne case, supra, for example involved facts almost identical to those in Vendrick. A prisoner filed a complaint similar to Appellant's seeking a declaration that, in applying the new parole guidelines, the APA Board had breached his plea agreement with the state. Id. at *5. In affirming the trial court's dismissal of that complaint, the 3rd District Court of Appeals held that the APA Board was not bound by the terms of the plea agreement in determining a prisoner's eligibility for parole. Id. at *7. See accord, Houston v.Wilkinson (June 29, 2001), 3rd Dist. No. 1-01-52 (stayed pending resolution of the conflict between the Layne and Randolph decisions inHouston v. Wilkinson (2001), 93 Ohio St.3d 1449, 756 N.E.2d 113).
 {¶ 24} In concluding that the districts are in conflict as to whether the APA Board is bound by the conditions set forth in plea agreements, the Ohio Supreme Court agreed to hear this issue. In theLayne case, the Court entered an order directing the parties to submit briefs addressing the following question:
 {¶ 25} "Is a plea agreement breached when the Ohio Adult Parole Authority (`APA') classifies an offender, for purposes of its discretionary parole guidelines, according to the nature of the offense rather than the lesser offense to which the plea is entered when the plea agreement has been fully performed by the prosecutor and the sentencing court, and the APA's classification will not result in the offender being incarcerated beyond the maximum sentence under the plea agreement?" Laynev. Ohio Adult Parole Auth. (2001), 93 Ohio St.3d 1448, 756 N.E.2d 113.
 {¶ 26} If the Supreme Court adopts the approach taken in Vendrick
and the cases cited therein, Appellant might be able to sustain a cause of action of some kind against the APA Board. In instituting the instant cause of action, however, Appellant sued, not the APA Board, but the county prosecutor's office, with whom he entered into the original plea agreement. Therefore, no matter how the Supreme Court resolves the question now before it, Appellant cannot receive the relief he appears to seek in the filing before us. Appellant's omission of the APA Board, a party critical to his cause of action, necessitates the dismissal of his action.
 {¶ 27} The pleading that Appellant filed and the trial court subsequently dismissed asked the court to declare that the APA Board, as an arm of the state, had breached his plea agreement by placing him in the aggravated murder category under the parole guidelines, among other things. Complaints seeking declaratory relief must conform to the dictates of R.C. § 2721.12. Subsection (A) of that provision requires those instituting actions seeking declaratory judgments to comply with the following:
 {¶ 28} "(A) * * *, when declaratory relief is sought under this chapter in an action or proceeding, all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding. * * *, a declaration shall not prejudice the rights of persons who are not made parties to the action or proceeding."
 {¶ 29} Appellant does not complain in this assignment of any actions taken by Appellee. His complaint is leveled against the APA Board and its actions. Aside from any other defect in this so-called declaratory action, because Appellant did not file this matter against the APA Board, the trial court had no choice but to dismiss his complaint.
 {¶ 30} In his second assignment of error, Appellant maintains that,
 {¶ 31} "`TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO DETERMINE THAT THE COURT OF COMMON PLEAS HAS PROPER JURISDICTION TO CONSIDER DECLARATORY JUDGMENT CLAIMS THAT REQUEST INJUNCTIVE RELIEF' AND THE VENUE IS PROPER IN THE MAHONING COUNTY COURT OF COMMON PLEAS."
 {¶ 32} Appellant appears to argue that the Court of Common Pleas had jurisdiction to entertain Appellant's complaint, that venue in Mahoning County was proper and that the trial court should not have dismissed on those grounds. This argument is meritless. The order from which this appeal is taken clearly reflects that Appellant's complaint was dismissed because the trial court concluded it lacked merit. The case was not dismissed because of any defect in venue or jurisdiction.
 {¶ 33} Appellant's third and eighth assignments of error challenge the trial court's acceptance of his guilty plea, stating as follows:
 {¶ 34} "PER THE RECORD, THE TRIAL COURT DID NOT SUBSTANTIALLY COMPLY WITH CRIMINAL RULE 11, IN THAT SAME DID NOT `PERSONALLY' ADDRESS THE DEFENDANT, `DETERMINING THAT HE IS MAKING THE PLEA VOLUNTARILY, WITH UNDERSTANDING OF THE NATURE OF THE CHARGE AND OF THE MAXIMUM PENALTY INVOLVED, AND IF APPLICABLE, THAT HE IS NOT ELIGIBLE PROBATION . . . (b) INFORMING HIM AND DETERMINING THAT HE UNDERSTANDS THE EFFECT OF HIS PLEA OF GUILTY . . . AND THAT . . . ACCEPTANCE OF THE PLEA MAY PROCEED WITH JUDGMENT AND SENTENCE . . ., MAKING THE PLEA UNKNOWING, UNINTELLIGENT, INVOLUNTARY IN VIOLATION OF THE 6th AND 14th AMENDMENT OF THE U.S. CONSTITUTION, EQUAL PROTECTION AND DUE PROCESS CLAUSE OF SAME. HAD THE DEFENDANT BEEN INFORMED OF HIS U.S. CONSTITUTIONAL RIGHTS, HE WOULD NOT OF PLED GUILTY AND WOULD HAVE INSISTED ON GOING TO TRIAL. TRIAL COUNSEL WAS U.S. CONSTITUTIONALLY INEFFECTIVE UNDER THE 6th AND 14th AMENDMENT, § 10, ARTICLE I
OF THE OHIO CONSTITUTION FOR NOT INSURING THAT THE DEFENDANT ENTERED A KNOWING VOLUNTARY AND INTELLIGENT PLEA CREATING A CRIM. R. `MANIFEST INJUSTICE'. 32.1, AND DID NOT INFORM THE DEFENDANT OF MANDATORY FINES
 {¶ 35} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN T (sic) FAILED TO ORDER THE DEFENDANT AN EVIDENTIARY HEARING IF THE TRIAL COURT IS NOT SATISFIED WITH THE DOCUMENTS (sic) AUTHENTICITY OF SAME OR TO TAKE TESTIMONY IN RE THE ALLEGATIONS CONTAINED IN THE 32.1 MOTION, VIOLATING 5, 14th AMENDMENT RIGHT"
 {¶ 36} Since these assignments of error both contest the trial court's dismissal of Appellant's motion seeking to withdraw his twenty-year-old guilty plea, they will be addressed together.
 {¶ 37} Initially, it is plain that both claims could and should have been raised on direct appeal and were not. Therefore, Appellant is barred from raising them now under the doctrine of res judicata. Res judicata bars a convicted defendant who was represented by counsel from raising and litigating, in any proceeding except on direct appeal from a final judgment, any defense or claimed lack of due process that was or could have been raised at trial or on direct appeal. State v. Cole
(1982), 2 Ohio St.3d 112, 443 N.E.2d 169. In other words, unless the defendant can present additional evidence previously outside or "dehors" the record to support his constitutional challenge, res judicata bars this Court from considering this challenge. State v. Hessler, 10th Dist. No. 01AP-1011, 2002-Ohio-3321; and State. v. Bettem, 7th Dist. No. 01 BA 24, 2002-Ohio-3039.
 {¶ 38} The record reflects that on direct appeal, this Court addressed and rejected a similar attack on the circumstances surrounding the trial court's acceptance of Appellant's guilty plea. There, Appellant contended that in accepting his guilty plea the trial court failed to admonish him that the plea would constitute a waiver of his right to challenge its earlier order denying his motion to suppress. We concluded at the time that the trial court had no such obligation, stating that,
 {¶ 39} "[w]hen the pleader is represented by counsel, the court may conclude that certain advice has been given. Especially advice relative to the plea bargain. What has been bargained away for the gain obtained? This is a part of the panoply of trial strategy and not a part of the consequence of the plea."
 {¶ 40} Accordingly, we held, "the court is not required, during the plea dialogue, to ascertain that the pleader has been effectively counseled in what has gone on prior to the plea." Wright, supra, at *1.
 {¶ 41} Even if we could reach the merits of Appellant's challenge to his twenty-year-old guilty plea, we would not overrule the trial court's decision denying his request to withdraw that plea. Motions to withdraw guilty pleas are governed by Crim.R. 32.1 and, while such requests made before the imposition of sentence are supposed to be granted liberally, those sought after sentencing (in this case twenty years after sentencing) are allowed only upon a showing of manifest injustice. State v. Xie (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715. The decision to grant or deny such a motion is reserved to the sound discretion of the trial court. State v. Battaglia (March 26, 1993), 11th Dist. No. 92-L-011. The good faith, credibility and weight of the allegations leveled in support of the motion are to be resolved by the trial court. State v. Smith (1977), 49 Ohio St.2d 261, 264,361 N.E.2d 1324.
 {¶ 42} Under Crim.R. 32.1, one seeking to withdraw a guilty plea must show that the proceeding during which he entered that plea was extraordinarily and fundamentally flawed. Id. In reviewing the trial court's decision with respect to such motions, this Court looks to the following factors: 1) whether the accused was represented by counsel at the time of the plea; 2) whether the accused received a full hearing under Crim.R. 11 before entering his plea; 3) whether the trial court afforded the accused an impartial hearing on his motion to withdraw the plea; and 4) whether the record establishes that the trial court gave full and fair consideration to the plea withdrawal request. State v. Hart
(September 16, 1988), 6th Dist. No. L-87-371; citing, State v. Peterseim
(1980), 68 Ohio App.2d 211, 214, 428 N.E.2d 863.
 {¶ 43} According to Appellant, his guilty plea was not made in a knowing or intelligent manner where the proceedings surrounding that plea were fundamentally deficient. Appellant complains that to avoid manifest injustice the trial court was obliged to grant his motion to withdraw the plea. Due process requires that when one pleads guilty to an offense, he does so knowingly and intelligently. State v. Northern, 3rd Dist. No. 1-01-01, 2001-Ohio-2229; citing, Parke v. Raley (1992), 506 U.S. 20,113 S.Ct. 517, 121 L.Ed.2d 391. Crim.R. 11(C)(2) requires that prior to accepting guilty pleas in felony cases, the trial court must address the defendant personally while:
 {¶ 44} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 45} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 46} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilty beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 47} This Court has held that the record must reflect that the trial court substantially complied with the aforementioned provisions.State v. Gales (1999), 131 Ohio App.3d 56, 60, 721 N.E.2d 497; citing,State v. Johnson (1988), 40 Ohio St.3d 130, 133, 532 N.E.2d 1295. "Substantial compliance" under Crim.R. 11 means that under the totality of the circumstances, the defendant subjectively understands the consequences of the plea and the nature of the rights being waived. Statev. Nero (1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474; citing, State v.Carter (1979), 60 Ohio St.2d 34, 38, 396 N.E.2d 757. The "consequences" to which the rule speaks are those that have a, "definite, immediate and automatic effect on the sentence." See State v. Moore (Aug. 27, 1998), 10th Dist. No. 73899, at *1.
 {¶ 48} An examination of the transcript of proceedings during which Appellant entered his plea reveals that the trial court addressed Appellant as follows:
 {¶ 49} "Court: Now, I want you to understand that upon acceptance of your plea of guilty to the charge of murder that I am going to proceed to sentencing this morning, and I'll sentence you this morning to a period of time in a Columbus Correctional Facility at Columbus, Ohio, for not more than fifteen years to life, do you understand that?
 {¶ 50} "Appellant: Yes, sir.
 {¶ 51} "Court: I want you to understand that I am going to sentence you; there's no question of probation; you will get none. The matter of parole, eligibility of parole, all these things are not this Court's determination. I don't have anything to do with that, shock parole, parole, whatever, do you understand that?
 {¶ 52} "Appellant: Yes, sir.
 {¶ 53} "Court: When you would be eligible for parole, I have no knowledge; that's a matter of the State by Statute. I have no control of that, and I'm not telling you anything about that, do you understand?
 {¶ 54} "Appellant: Yes, your Honor." (Appendix, Exh. A, Tr. p. 4).
 {¶ 55} As the hearing progressed, the court went on to state:
 {¶ 56} "Court: Now, you understand that upon acceptance of your plea of guilty that I am going to proceed immediately this morning with sentencing. I'm going to sentence you to not less than fifteen years, nor more than life.
 {¶ 57} "Appellant: Yes, your Honor.
 {¶ 58} "Court: Do you still want to enter your plea of guilty under those circumstances?
 {¶ 59} "Appellant: Yes, your Honor.
 {¶ 60} "Court: Now, tell me, has anybody put any pressure on you or intimidated you to get you to enter this plea of guilty?
 {¶ 61} "Appellant: No.
 {¶ 62} "Court: Has anybody made any promises to you to get you to do this?
 {¶ 63} "Appellant: No, your Honor.
 {¶ 64} "Court: Has anybody made any promises to you of any kind, please tell me, I want to know?
 {¶ 65} "Appellant: No, your Honor." (Appendix, Exh. A, p. 6).
 {¶ 66} The above discourse demonstrates that the trial court substantially complied with the letter and spirit of Crim.R. 11 when it entertained and accepted Appellant's guilty plea. Since the record is devoid of evidence which would tend to undermine such a conclusion, this Court will not reconsider its previous determination that Appellant entered his guilty plea knowingly, intelligently, and voluntarily.
 {¶ 67} As we noted above, under Crim.R. 32.1 it was Appellant's duty to prove that the proceedings surrounding his plea were somehow fatally defective or abnormal. Since Appellant failed to sustain that burden, the trial court's denial of Appellant's motion to withdraw his plea was entirely proper.
 {¶ 68} Appellant's fourth assignment of error is as follows:
 {¶ 69} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO DETERMINE THAT THE OHIO GUIDELINES, INSTITUTED IN 1998, VIOLATE THE U.S. SUPREME COURT DECISION OF Apprendi v. New Jersey U.S. No. 99-478, 6-28-00, WHERE SAME HELD `ON IT'S FACE . . . LAW WAS UNCONSTITUTIONAL BECAUSE TO ALLOWED . . . MORE (PUNISHMENT) INCREASES-PUNISHMENT . . . MUST BE SUBMITTED TO A JURY . . .' IN RE THE FACT THAT" Ex. B, p. 72 GUIDELINES, STATES ALLOWS FOR AN `INCREASE IN PUNISHMENT, 4., B . . . `THAT TAKING THE RECORD AS A WHOLE, THE CONDUCT . . . IN QUESTION ARE ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE. C. PREPONDERANCE OF THE EVIDENCE . . . MAY BE DEFINED AS EVIDENCE THAT (1) IS MORE CREDIBLE AND CONVINCING THAT THE EVIDENCE OFFERED IN OPPOSITION TO IT; AND 2) TAKEN AS A WHOLE, SHOWS THE FACT SOUGHT TO BE ESTABLISHED IS MORE PROBABLE THAN NOT."
 {¶ 70} Appellant argues here that the parole guidelines the APA Board applied were unconstitutional in light of the U.S. Supreme Court's decision in Apprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435. Because we conclude that the Apprendi decision has no application to the instant case, this Court overrules Appellant's fourth assignment of error.
 {¶ 71} In Apprendi, the United States Supreme Court held that the constitution requires any fact that increases the penalty for a crime beyond a statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Id. The only exception to this rule is where the fact that the defendant has a record of a prior conviction itself is the factor which increases the penalty. Apprendi involved a New Jersey statute that permitted the trial court to increase the maximum sentence from ten to twenty years if it found that the crime was motivated by the race of the victim. Id. at 468. In reversing the defendant's sentence, the Court found that because the sentencing factor exposed the defendant to greater punishment than that authorized by the jury's verdict, it became an element of the offense. Consequently, like the other elements of the crime, the prosecution was obliged to plead and prove the aggravating sentencing factor beyond a reasonable doubt. Id. at 490-494.
 {¶ 72} Here, Appellant does not challenge the application of a sentence enhancing statute. In fact, Appellant's sentence was not enhanced. Appellant opted not to take his case to trial, choosing instead to enter into a plea agreement with the prosecution in exchange for a reduced charge. Apprendi had no implications for the collateral consequences of a plea. State v. Idowu, 1st Dist. No. C-010646, 2002-Ohio-3302; see also People v. Jackson (2002), 199 Ill.2d 286,769 N.E.2d 21 (defendant who pleads guilty to an offense with full knowledge that the court could impose an extended term waives allApprendi based challenges).
 {¶ 73} Moreover, as Appellee notes, a prisoner has no constitutional right to release, conditional or otherwise, prior to the expiration of a valid sentence. (Appellee's Brf. p. 11; citing,Greenholtz v. Inmates of Nebraska Penal and Corrections Complex (1979),442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668; see accord, Sandin v.Conner et al. (1995) 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418
(deprivation of liberty in prison context does not implicate the due process clause unless it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life). Since there was no indication that Appellant's valid fifteen year to life sentence was increased by the APA Board's decision, no due process violation occurred.
 {¶ 74} In his fifth and sixth assignments of error, Appellant argues that,
 {¶ 75} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO DETERMINE THAT PER THE RECORD THE DEFENDANTS' (sic) USE OF ORIGINAL INDICTMENT, AFTER NEGOCIATING (sic) A PLEA TO REDUCED CHARGES, OR OTHER PLEA AGREEMENT VIOLATED BY THE DEFENDANTS VIOLATES THE DOUBLE JEOPARDY CLAUSE OF THE 5th, 14th AMENDMENT U.S. CONSTITUTION.
 {¶ 76} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO DETERMINE THE Ex A: 1998 GUIDELINES, AMENDED 4-2001, VIOLATE `CHAPTER 5120-2 OF THE ADMINISTRATIVE CODE SHALL NOT BE APPLIED IN SUCH A MANNER AS TO UNCONSTITUTIONALLY EXTEND THE MINIMUM PERIOD OF ELIGIBILITY FOR PAROLE OF ANY PRISONER IN CONTRAVENTION OF ANY STATUTORY PROVISION WHICH MAY HAVE BEEN IN EFFECT AT THE TIME THE CRIME WAS COMMITTED', Ex P, Q, ANNEXED HERETO, VIOLATING EQUAL PROTECTION CLAUSE, DUE PROCESS CLAUSE, 5, 14th AMENDMENT U.S. CONSTITUTION"
 {¶ 77} Since both assignments of error argue that the guidelines violate the constitution, they can be more efficiently addressed at the same time.
 {¶ 78} Appellant maintains that the APA Board's decision to place him in a parole eligibility category 13 based on the initial charge of aggravated murder offends the constitution's double jeopardy and equal protection clauses. Since neither of those constitutional concerns are implicated by the guidelines, these assignments of error are overruled.
 {¶ 79} The double jeopardy clause provides that no person shall, "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5; see also, United States v. Dixon (1993),509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556, citing, North Carolina v.Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. The double jeopardy clause addresses three interests: (1) it protects against a second prosecution for the same offense after acquittal, (2) it protects against a second prosecution for the same offense after conviction, and (3) it protects against multiple punishments for the same offense. Statev. Ward (1999), 130 Ohio App.3d 551, 571, 720 N.E.2d 603; citing, Gradyv. Corbin (1990), 495 U.S. 508, 516, 110 S.Ct. 2084, 109 L.Ed.2d 548.
 {¶ 80} Equal protection under the law as it is contemplated by the United States Constitution's Fifth and Fourteenth Amendments is not a source of substantive rights or liberties. Rather, it prohibits purposeful, class-based, invidious discrimination. Harris v. McRae
(1980), 448 U.S. 297, 322, 100 S.Ct. 2671, 65 L.Ed.2d 784; Washington v.Davis (1976), 426 U.S. 229, 238-248, 96 S.Ct. 2040, 48 L.Ed.2d 597. Accordingly, where a statutory classification does not itself impinge on a right or liberty protected by the constitution, the validity of the classification will be sustained unless it, "rests on ground wholly irrelevant to the achievement of [any legitimate government] objective."Harris, supra; citing, McGowan v. Maryland (1961), 366 U.S. 420,81 S.Ct. 1101, 6 L.Ed.2d 393.
 {¶ 81} The revised parole guidelines were established to, "assist the Parole Board in making consistent, fair and equitable decisions in determining the amount of time an offender must serve before being released to the community, without removing the opportunity for individual case consideration. The guidelines are based on the seriousness of the offender's offense and the offender's risk of recidivism, and provide for the consideration of the offender's institutional conduct." (Exh. B, Parole Guidelines Manual, April 1, 2000, Preface, p. v).
 {¶ 82} In Coventry v. Ghee, 5th Dist. No. 01CA89, 2002-Ohio-2523, a case with facts analogous to those at bar, the court addressed many of the same constitutional challenges and held that the, "issue of parole guidelines [wa]s not appropriate for constitutional review." Id. at P20. With respect to the prisoner's double jeopardy argument, the court noted that when the defendant receives a sentence of fifteen years to life, any term of years during the prisoner's actual life span may be appropriate. Therefore, the APA Board's determination that the prisoner was not parole eligible until after serving twenty-five years was not double jeopardy. Id. at P22.
 {¶ 83} The court in Coventry also discussed the prisoner's challenge under the Equal Protection Clause. In denying this challenge, the court noted that the APA Board is entitled to consider the nature of the actual offense even in cases where the sentence resulted from a plea to a lesser crime. Id. at P23; citing State ex rel. Lipschultz v.Shoemaker (1990), 49 Ohio St.3d 88, 551 N.E.2d 160 (language under OAC 5121:1-108(L) allowing the APA Board to consider prisoner's "pattern of criminal behavior" in determining parole eligibility contemplates crimes outside of those on which he was convicted); see accord, Papp v. OhioState Adult Parole Auth. (January 24, 2002), 10th Dist. No. 01 AP-892 (holding that APA Board may consider other crimes committed by an offender when assessing whether to grant parole and affirming dismissal of the offender's complaint for declaratory judgment under Civ.R. 12(B)(6)).
 {¶ 84} The approach taken in Coventry and cases adopting similar reasoning is sensible, particularly given the absolute discretionary authority accorded the APA Board's parole making decisions under R.C. § 2967.03. Consequently, this Court overrules Appellant's fifth and sixth assignments of error.
 {¶ 85} Appellant's seventh assignment of error alleges that,
 {¶ 86} "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO DETERMINE THAT: `The Supreme Court . . . Held that application of revised sentencing guidelines
to petitioner, whose crimes occurred BEFORE their effective date, violated ex post facto clause . . . it did not warn defendant of specific punishment prescribed for his crimes. U.S.C.A. Const. Art. 1, §§ 9, cl.3, 10, cl. 1 . . . Application of revised sentencing guidelines . . . disadvantaged defendant by increasing presumptive ive (sic) sentence and violating ex post facto clause' Miller v. Florida 107 SCt 2446 prisoners' rights are being violated by the state under the Ex Post Facto Clause, U.S.C.A. Const. Art. 1, § 10. cl. 1, Const. Art. 2, § 28, Dobbert v Florida, 97 S.Ct. 2290, 2299. See CrimINAL Rule 32.1 CAUSE OF ACTION: PER EX 1, IS THE `OLD GUIDELINES' IN EFFECT WHEN THE PLAINTIFF WAS SENTENCED THESE ARE THE GUIDELINES THAT SHOULD BE APPLIED TO PLAINTIFF WITHOUT VIOLATING THE EX POST FACTO CLAUSE . . . `NEW GUIDELINES' WERE ENACTED IN 1998, 
THAT THE PLAINTIFF IS UNDER THE PRE-1996 LAW, CAUSE THE PLAINTIFF `to serve more time under the post 1998 guidelines than he would under the `pre-1998' guidelines. This has been determined by this (S.D.Ohio), Hill v Wilkerson et al., Case #C2-00-142, to violate the Ex Post Facto Clause, and same would be applicable to PLAINTIFF' ON THIS COMPLAINT."
 {¶ 87} In this, his final assignment of error, Appellant argues that the application of the APA Board's guidelines to his case violates the constitution's prohibition against ex post facto laws. The Ex Post Facto Clause forbids the enactment of any law that increases the punishment for a crime when it was committed. Muhammad v. Kinkela (Dec. 21, 2000), 10th Dist. No. 00AP-525; citing, California Dept. ofCorrections v. Morales (1995), 514 U.S. 499, 504, 115 S.Ct. 1597, 1313 L.Ed.2d 588. Legislation also violates the ex post facto prohibition where it, "punishes as a crime an act previously committed, which was innocent when done * * *, when it increases the punishment for a crime after its commission, or deprives the accused of a defense available at the time the crime was committed." State v. Gleason (1996),110 Ohio App.3d 240, 246, 673 N.E.2d 985; citing Beazell v. Ohio (1925),269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216.
 {¶ 88} To support his claim that the guidelines violate the Ex Post Facto Clause, Appellant directs us to an unpublished magistrate's report and recommendation in a case entitled Hill v. Wilkerson (S.D.Ohio 2000), Case No. C2-00-142. A brief reading of that filing, however, indicates that it provides no such support. Certainly, at no point in the document does the magistrate conclude that the guidelines violate ex post facto laws.
 {¶ 89} In Hill, the plaintiffs, a number of state prisoners, filed a complaint in the Federal District Court for the Southern District of Ohio under Title 42 U.S.C. § 1983 alleging that the guidelines violated their civil rights. The defendants moved to dismiss the complaint and argued that plaintiffs' challenge should have been the subject of a petition for writ of habeas corpus and was not cognizable as a civil rights action. The magistrate disagreed with the defendants. In a written recommendation addressing the narrow issue presented in the defendants' motion to dismiss, the magistrate concluded that since the inmates were claiming only their entitlement to parole, not seeking immediate release or challenging the validity of their confinement, the complaint stated a claim under § 1983. Id. at p. 7.
 {¶ 90} The approach taken by the reviewing court in Coventry, supra, in no way contradicts the conclusion the magistrate reached inHill. Nevertheless, in Coventry, the court concluded that because the guidelines were not enacted laws, their application did not implicate the Ex Post Facto Clause. Id. at P21. In State v. Masten, 3rd Dist. No. 5-01-45, 2002-Ohio-1392, the Court of Appeals for the Third District agreed, holding that since neither statute nor regulation created the guidelines, they place no substantive limit on the APA Board's discretion. Moreover, the court held, a prisoner had no right to rely on the parole guidelines in effect prior to his parole hearing date and any amended parole guidelines are not retroactively applied in violation of ex post facto concerns. Id. at *6. See also Muhammad, supra (because the parole guidelines are not legislative enactments, the Ex Post Facto Clause does not apply).
 {¶ 91} Under the circumstances, because the Board's use of the guidelines does nothing to alter the discretionary nature of its decision and the process during which that decision is reached, the Ex Post Facto Clause cannot apply. Accordingly, Appellant's seventh assignment of error is overruled.
 {¶ 92} Since we have overruled all of Appellant's assignments of error, this Court hereby affirms the judgment entered by the Mahoning County Court of Common Pleas.
Judgment affirmed.
Vukovich, P.J., concurs.
DeGenaro, J., concurs in judgment only; see concurring in judgment only opinion.