JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Marcellus Bibbs ("defendant") appeals from the judgment of the trial court which found him guilty of three counts of rape and three counts of kidnapping and designated him as a sexual predator. For the reasons set forth below, we affirm defendant's convictions and sexual predator designation, vacate his sentence and remand
 {¶ 2} In June of 2002, at the time the alleged crimes took place, defendant lived with his wife, Patricia, and her five children. According to facts adduced at trial, Patricia had a get together for her oldest daughter's birthday on June 19, 2002. During the party, R.A., one of Patricia's youngest three daughters, sprained her ankle and required medical attention. Patricia took R.A., then 12 years old, to the hospital for treatment. Her daughter P., then 10 years old, accompanied them, but her daughter R., then 8 years old, remained at the house with the defendant and his daughter. Patricia, R.A., and P. were at the hospital for a couple of hours that evening. When they arrived home sometime after midnight, Patricia noticed R. coming out of the bathroom. Patricia asked R. what she was doing up so late and R. responded that she was watching television. Patricia was not satisfied with R.'s answer, but briefly went into her bedroom that she shared with the defendant. Patricia saw the defendant was still awake in their bedroom and when she went in to speak with him, she noticed a wet spot on the bed, which she believed to be semen. Upon noticing the semen and still not satisfied with R.'s answer nor R.'s demeanor, Patricia continued to ask R. what was wrong. R. eventually disclosed to Patricia that the defendant had touched her "down there" in her "stoochie." Patricia also noticed that her daughter's underpants were wet. She called a friend and then immediately contacted the police.
 {¶ 3} The police arrived at Patricia's house and began an investigation. In addition to speaking with Patricia, R. and the defendant, the police also spoke to R.A. and P. The defendant was taken away by the police and Patricia took the three girls to the hospital for further examinations. All three girls indicated the defendant had touched them inappropriately, each on different occasions.
 {¶ 4} On February 5, 2003 defendant was indicted on three counts of rape of a child under the age of thirteen, in violation of R.C. 2903.02, three counts of kidnapping in violation of R.C.2905.01 each with a sexual motivation specification and three counts of gross sexual imposition in violation of R.C. 2907.05. Defendant pled not guilty to the indictment.
 {¶ 5} Following a jury trial, defendant was found guilty on three counts of rape and kidnapping and thereafter sentenced. He was also designated a sexual predator. It is from these rulings that defendant now appeals, asserting three assignments of error for our review.
 {¶ 6} "I. The verdicts are against the manifest weight of the evidence."
 {¶ 7} In this assignment of error, defendant asserts his convictions are against the manifest weight of the evidence. Specifically, he maintains the physical evidence was inconclusive and the weight and credibility the jury assessed to the victims' testimony was improper.
 {¶ 8} In determining whether a verdict is against the manifest weight of the evidence the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, citingTibbs v. Florida (1982), 457 U.S. 31, 38, 42. Accord State v.Otten (1986), 33 Ohio App.3d 339, 340. An appellate court must use discretion and only reverse convictions in extraordinary cases where the evidence clearly weighs in favor of reversal.State v. Thompkins, supra.
 {¶ 9} In this case, defendant was charged with the rape of R., R.A. and P. We address each rape conviction separately.
A. Rape of R.
 {¶ 10} As we noted previously, Patricia testified that she had taken her oldest daughter to the hospital to treat her sprained ankle. When they arrived home, Patricia noticed R. coming out of the bathroom. Patricia asked R. what she was doing up so late and, although there was no television on, R. responded that she was watching television. Patricia questioned her and was not satisfied with R.'s answers, but briefly went into her bedroom that she shared with the defendant. Patricia noticed the defendant was still awake in their bedroom and when she went in to speak with him, she noticed a wet spot on the bed, which she believed to be semen because of its smell. Upon noticing the semen and still not satisfied with R.'s answer nor R.'s demeanor, Patricia continued to ask R. what was wrong. R.'s eyes were watery and she began to cry. R. eventually disclosed to Patricia that the defendant had touched her "down there" in her "stoochie." Patricia also noticed that her daughter's underpants were wet.
 {¶ 11} At trial, the court determined R. was competent to testify. R. testified that she eventually went to bed after her mother and sisters went to the hospital the night of the birthday party. She remembers being awaked by the defendant, who took her into his bedroom. The defendant placed R. on the bed and took off her clothes. After the defendant pulled down his pants, she felt his private part in her "stoochie," a word she used to describe her vaginal area. When it was over, the defendant took R. back to her bedroom.
 {¶ 12} The prosecution presented the testimony of Ms. Herrera, the triage nurse on duty at University Hospital. She testified that when the girls arrived at 3:10 a.m. that morning, she took a brief history of R. and then prepared a rape kit for the doctor to perform on her. Ms. Herrera helped R. undress so her clothes could be included in the rape kit. While bending down and helping R. undress, Ms. Herrera noticed a very strong and distinct smell of semen on R. Ms. Herrera admitted on cross-examination that she failed to document the strong odor of semen. However, within days, she did notify detectives of this information.
 {¶ 13} The physician on duty when the children arrived at University Hospital for examination, Dr. Jill Sangree, testified at trial. Dr. Sangree stated that she collected a brief history of R. from her with the help of her mother. Dr. Sangree testified that, based on what R. shared with her during the interview, she believed vaginal penetration and possibly ejaculation occurred. She admitted that there was no physical evidence of the rape, but noted that a lack of physical evidence is not dispositive of whether a rape actually occurred. Specifically, Dr. Sangree stated that most of the time, the vaginal areas of prepubescent girls are so elastic that tears, scars and other symptoms of forcible rape are not detectable. Dr. Sangree opined that the fact that R.'s hymen was visible did not tell anything regarding whether she was raped.
 {¶ 14} The prosecution also presented the testimony of Sally McHugh, a social worker for the Cuyahoga County Department of Children and Family Services. Ms. McHugh was referred to the family for an investigation and conducted an interview with all of the children. Her findings from the investigation prompted her to recommend the family for ongoing services at the Care Clinic and to seek counseling.
 {¶ 15} Melissa Zielaskiewicz, a forensic scientist for the Ohio Bureau of Criminal Identification, testified that she conducted a DNA analysis on the evidence contained in R.'s rape kit. Her tests concluded that the major profile from the sperm found in R.'s underpants was consistent with the defendant's DNA. Specifically, the test results cannot exclude the defendant as the source of semen and indicate the chance of finding the same DNA profile in someone other than the defendant would be one in 298 billion 500 million. She also performed presumptive testing on the shorts R. had been wearing that evening and found two stains that were positive presumptive for semen. On cross-examation Ms. Zielaskiewicz admitted that it is possible, though not probable, that R.'s underpants could have contained the defendant's semen as a result of cross-contamination from a laundry hamper.
 {¶ 16} The prosecution presented the testimony of Lauren McAliley, a nurse practitioner with University Hospital's Child Protection Program, a clinic operated for children who have made claims of sexual abuse. Ms. McAliley conducted a question and answer style interview with all of the girls. She read into evidence the questions and answers of R., which were consistent with her testimony at trial. Ms. McAliley opined that sexual abuse was probable, taking into consideration the history R. provided her, the history provided from the other sources and the physical exam.
 {¶ 17} Rape of R.A.
 {¶ 18} R.A. testified that one day when she was twelve, she was home with the defendant, his daughter and son, and her sisters and brother. They were playing outside when she decided to go inside to make herself a sandwich. She went into the kitchen alone and soon after, felt the defendant unbuttoning her pants. R.A. tried to get him off of her and tried to leave through the back door, but the defendant managed to grab her arm and pull her into the master bedroom. Once there, he pulled down her pants, took off her shirt, pushed her on the bed and vaginally raped her. She also testified that he kissed her on the lips and on her vagina. R.A. stated that he stopped when he heard someone coming in the back door. He ordered R.A. to take a shower. When R.A. went in the bathroom, she looked down and saw slimy white stuff. R.A. took a shower, but did not tell anyone about the incident, until she told the police during the investigation of R.'s rape.
 {¶ 19} Ms. McAliley read into evidence portions of the question and answer interview she had with R.A., which were consistent with R.A.'s testimony at trial. Ms. McAliley found aspects of R.A.'s interview to be significant, including her ability to recall specific details such as: the fact that she thought she was first being taken to the defendant's room for punishment, which Ms. McAliley thought to be a reasonable assumption for a child; when asked if other parts of the body were touched, R.A. was very definite about what was and wasn't touched; R.A.'s statement that the defendant, upon hearing other children, ordered her to take a shower; and R.A.'s statement that she found white stuff in her underpants before showering. Ms. McAliley cited similar significant aspects of R.'s and P.'s interviews.
 {¶ 20} Rape of P.
 {¶ 21} P. testified that she was lying in the top bunk bed with her sister, R.A. one night while going to sleep. The defendant came in the room, walked toward the bunk bed and tried to pull P. out of bed. R.A. attempted to pull her back into bed, but the defendant was much stronger and successfully pulled P. out of bed. Using anatomically correct dolls, P. testified that the defendant pulled her down to the bottom bunk, pulled her pajama bottoms down and inserted his penis into her vagina. P. stated that she and her sister decided not to tell their mother about the incident because they were afraid the defendant would do it again.
 {¶ 22} R.A. corroborated P.'s testimony. R.A. stated that the night she was sharing the top bunk with P. and the defendant pulled P. out of bed, she then saw the defendant with his penis out lying over P.'s vagina, with her pants not on all the way. R.A. ran out of the room, and when she returned she found P. crying and trying to pull up her pants. R.A. comforted her little sister and the two agreed not to tell their mother about the incident.
 {¶ 23} Ms. McAliley read into evidence portions of the question and answer interview she had with P., which were consistent with P.'s testimony at trial.
 {¶ 24} The defense called Patricia as a witness and attempted to elicit testimony that she and defendant were having problems at the time of these alleged incidents, and that she set the defendant up to look guilty of rape.
 {¶ 25} The defendant testified that, on the night of the alleged rape of R., he went into his bedroom and masturbated while watching a pornographic movie. He said he then went to bed. He claimed that Patricia thought he was cheating on her, knew he had just ejaculated and there was a wet spot on the bed. He stated that he did not know how his semen came to be on R.'s underwear, but alluded that Patricia was trying to get back at him for his alleged cheating.
 {¶ 26} The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact, who observed the witness in person. State v.Antill (1964), 176 Ohio St. 61; State v. DeHass (1967),10 Ohio St.2d 230. On this record, we cannot say that the evidence weighs heavily against the conviction or that the jury lost its way and created a manifest miscarriage of justice in convicting defendant of the rape charges against R., R.A. or P. Accordingly, this assignment of error is without merit. Given the disposition of assignment of error II, we decline to address the weight of the evidence argument as it relates to defendant's convictions for kidnapping.
 {¶ 27} "II. The trial court erred by failing to merge the convictions of kidnapping and rape in violation of R.C. 2941.25
(B)."
 {¶ 28} In his second assignment of error, defendant maintains the trial court erred in failing to merge his convictions for rape and kidnapping, arguing the kidnappings involved the force necessary to facilitate the rape offenses and did not constitute a separate and distinct animus.
 {¶ 29} R.C. 2941.25 provides:
 {¶ 30} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 31} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 32} The test to determine whether kidnapping was committed with a separate animus is "whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense." State v. Lynch, 98 Ohio St.3d 514,2003-Ohio-2284 citing State v. Logan (1979), 60 Ohio St.2d 126. In Logan, supra, the Ohio Supreme Court stated,
 {¶ 33} "The primary issue, however, is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense. In the instant case, the restraint and movement of the victim had no significance apart from facilitating the rape. The detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape. In such circumstances, we cannot say that appellant had a separate animus to commit kidnapping." at 135.
 {¶ 34} In this case, defendant was convicted of kidnapping all three children. The state concedes the kidnapping charges against R.A. and R. should have merged for sentencing. A thorough review of the facts in this case reveals this concession is warranted.
 {¶ 35} Defendant lived in the home with his victims. R.A. testified that defendant took her by the arm while she was in the kitchen and led her to his bedroom, thereafter raping her. When defendant heard someone come home, he ordered R.A. to leave his bedroom and take a shower. R. testified that defendant took her from her bedroom into his bedroom to rape her. In both instances, there is no evidence of a separate animus; rather, the evidence demonstrates the kidnappings were committed in furtherance of and incidental to the rapes. As in Logan, supra., the detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape. Id. We cannot say that defendant had a separate animus to commit kidnapping against R.A. and R. and find that the kidnapping charges committed against R.A. and R. should have merged with the rape charges committed against them.
 {¶ 36} With regard to P., however, we find the defendant acted with a separate and distinct animus when kidnapping her. Testimony from both P. and R.A. indicated that defendant attempted pull P. down from the bunk bed she shared with R.A.R.A. fought back, pulling P. back into bed. Eventually, defendant was successful in pulling P. from her bunk bed. He then laid her on the floor and raped her. Defendant's act of pulling P. out of her bed, and in essence, engaging in a tug of war with R.A., demonstrates that he acted with a separate animus in restraining her liberty, separate and distinct from his animus to rape her. We find the trial court did not err in not merging the kidnapping charge with the rape charge regarding P. We therefore affirm in part and sustain in part defendant's second assignment of error.
 {¶ 37} "III. The evidence is insufficient to sustain a finding that the appellant is a sexual predator."
 {¶ 38} In his final assignment of error, defendant maintains there is insufficient evidence to sustain a determination that he is a sexual predator. Specifically, defendant alleges the state failed to introduce any evidence or testimony to support its position that defendant was a sexual predator and failed to introduce documents upon which it relied by way of a witness. As a result, he asserts his sexual predator designation was in error.
 {¶ 39} A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01 (E). State v.Eppinger (2001), 91 Ohio St.3d 158. The state has the burden of proving that the offender is a sexual predator by clear and convincing evidence. R.C. 2950.09 (B)(3).
 {¶ 40} In making a determination under divisions (B)(1) and (3) of this section as to whether an offender is a sexual predator, the judge shall consider all relevant factors including, but not limited to all of the following:
 {¶ 41} "(a) The offender's age;
 {¶ 42} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 43} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 {¶ 44} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 {¶ 45} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 46} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 {¶ 47} "(g) Any mental illness or mental disability of the offender;
 {¶ 48} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 49} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 {¶ 50} "(j) Any additional behavioral characteristics that contribute to the offender's conduct." R.C. 2950.09 (B)(2)."
 {¶ 51} Although the trial court is not required to list all of the criteria and is only obligated to consider all relevant factors, it should discuss the factors on the record and the particular evidence upon which it relies in determining the likelihood of recidivism. Eppinger, supra., at 167. Cook,
supra; State v. Ward (1999), 130 Ohio App.3d 551. This does not mean that R.C. 2950.09 (B)(2) requires that all listed factors be met before an offender can be designated a sexual predator.State v. Goodall (July 6, 2000), Cuyahoga App. No. 76491.
 {¶ 52} In this case, the trial court specifically addressed the statutory factors and determined the defendant to be a sexual predator. The trial court cited to the fact that all three of the victims were young girls, ages eight, ten and twelve; the offenses were serial in nature; there were multiple victims and the incidents constituted an ongoing pattern of sexual misconduct. The trial court considered the Static-99, a psychological test that was specifically designed to predict recidivism among sexual offenders, and the Abel assessment, and chose to base its assessment on both the assessments and on the heinous facts of the underyling convictions. The evaluations of the defendant placed him in the "medium-low" category for recidivism.
 {¶ 53} "While it is impermissible to rely solely on the underlying conviction, a court may consider the facts of the underlying crime as a basis for a sexual predator determination. The circumstances of the crime for which the defendant was convicted can, without more, support the designation of sexual predator by clear and convincing evidence." [Emphasis added.]State v. Eaton, Montgomery App. No. C.A. 18690, 2001-Ohio-1760. Further, the Ohio Supreme Court has held that conviction of a single sexually oriented offense can support a sexual predator adjudication. State v. Eppinger (2001), 91 Ohio St.3d 158, 167,
 {¶ 54} Lastly, in a sexual predator adjudication hearing, the trial court is not bound by the results on the Static-99 test, which show that the defendant is at a comparatively low risk to re-offend; rather, the trial court is required to consider all the evidence and circumstances of the particular case under the statutory guidelines. State v. Morales (2003),153 Ohio App.3d 635.
 {¶ 55} In this case, we find the trial court properly considered the defendant's results on the Static-99 and Abel test, coupled with the fact that there were multiple victims of tender years and an ongoing pattern of sexual misconduct, in designating the defendant to be a sexual predator. We therefore overrule this assignment of error.
 {¶ 56} Judgment affirmed in part, vacated in part and remanded.
 {¶ 57} It is ordered that appellee and appellant split the costs herein taxed.
 {¶ 58} The Court finds there were reasonable grounds for this appeal.
 {¶ 59} It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J., Concurs.
 Kilbane, P.J., Concurs in judgment only.